_____ FILED          _____ ENTERED
_____ LODGED     _____ RECEIVED

JAN 3 0 2009     LK

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NEW ORLEANS EMPLOYEES'
RETIREMENT SYSTEM and
MARTA/ATU LOCAL 732 EMPLOYEES
RETIREMENT PLAN, individually and on
behalf of all others similarly situated,

Plaintiffs,

v.

THE FIRST AMERICAN
CORPORATION AND FIRST
AMERICAN eAPPRAISEIT, LLC,

Defendants.

Case No. **C09-0137** JUR

**NOTICE OF REMOVAL**

**09-CV-00137-CMP**

**TO:**          **THE CLERK OF THE COURT**

**AND TO:**     **PLAINTIFFS THROUGH THEIR COUNSEL OF RECORD**

    **PLEASE TAKE NOTICE** that, for the reasons set forth below, defendants The First

American Corporation and eAppraiseIT, LLC[1] (collectively, "Defendants"), through their

undersigned counsel, hereby remove the above-captioned action from the Superior Court of the

---

[1] The Complaint names First American eAppraiseIT, LLC as a defendant. The correct legal name of that entity is
eAppraiseIT, LLC.

NOTICE OF REMOVAL - 1
CASE NO.

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 | Tel: 206.839.4800

1  State of Washington in and for King County to the United States District Court for the Western

2  District of Washington. This Notice of Removal is filed pursuant to 28 U.S.C. §§ 1332, 1441,

3  1446 and 1453, and Western District of Washington Civil Rule 101.

4      In support of their removal of this action, Defendants state as follows:

5      1.    On or about December 24, 2008, plaintiffs New Orleans Employees' Retirement

6  System ("NOERS") and MARTA/ATU Local 732 Employees Retirement Plan ("MARTA")

7  (collectively, "Plaintiffs") filed this action in the Superior Court of the State of Washington in

8  and for King County, Case No. 08-2-43598-9 SEA. A copy of Plaintiffs' state court complaint

9  (the "Complaint") is attached to this Notice as **Exhibit A**.

10      2.    On or about January 2, 2009, eAppraiseIT, LLC was served with a summons

11  and a copy of the Complaint. To date, The First American Corporation has not been served.

12      3.    This action is properly removable under 28 U.S.C. §§ 1441 and 1453 because

13  this Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a) and (d).

14      4.    This Notice of Removal is filed within thirty days of receipt by Defendants,

15  through service or otherwise, of the Complaint in this lawsuit, and removal is therefore timely

16  under 28 U.S.C. § 1446.

17      5.    The Superior Court of the State of Washington in and for King County is located

18  within the Western District of Washington. Venue is therefore proper under 28 U.S.C.

19  § 1441(a).

20      **REMOVAL IS PROPER BASED ON DIVERSITY OF CITIZENSHIP.**

21      6.    This case is subject to removal based on diversity of citizenship because the

22  amount in controversy exceeds $75,000 and there is complete diversity among Plaintiffs and

23  Defendants. *See* 28 U.S.C. § 1332(a).

24      7.    On information and belief, the amount in controversy exceeds $75,000.

25  28 U.S.C. § 1332(a). In the Complaint, Plaintiffs allege that they each purchased securities

26  from multiple series of the mortgage-backed securities described in the Complaint. *See*

1   Complaint ¶¶ 16 ("[NOERS] purchased WaMu Mortgage Pass-Through Certificates Series

2   2006-AR14, . . . 2006-AR16, and . . . 2006-AR18 . . . ."); Complaint ¶ 17 ("[MARTA]

3   purchased WaMu Mortgage Pass-Through Certificates Series 2006-AR2, . . . 2006-AR16, . . .

4   2006-AR18, . . . 2007-HY2, . . . 2007-HY4, and . . . 2007-HY7 . . . ."). Each series of

5   securities that Plaintiffs claim to have purchased was offered in minimum denominations of

6   $25,000. Plaintiffs allege that the securities have declined in value and that they have been

7   harmed thereby (*see, e.g.*, Complaint ¶ 18), and Plaintiffs seek, *inter alia*, both compensatory

8   and rescissory damages from Defendants. *See* Complaint at 58. In light of Plaintiffs'

9   allegations, Defendants reasonably believe that Plaintiffs are seeking damages in excess of

10   $75,000. *See* W.D. Wash. Civil Rule 101(a).

11        8.        There is complete diversity of citizenship among Plaintiffs and Defendants. 28

12   U.S.C. § 1332(a)(1).

13           a.        On information and belief, Plaintiffs are both defined benefit pension

14   plans. A defined benefit pension plan is a trust, and, for purposes of diversity jurisdiction, "a

15   trust is a citizen of whatever state the trustee is a citizen of." *May Dep't Stores Co. v. Fed. Ins.*

16   *Co.*, 305 F.3d 597, 599 (7th Cir. 2002); *Johnson v. Columbia Properties Anchorage, LP*, 437

17   F.3d 894, 899 (9th Cir. 2006). On information and belief, NOERS' trustees are citizens of the

18   state of Louisiana, and NOERS is therefore a citizen of the state of Louisiana. On information

19   and belief, MARTA's trustee is a citizen of the state of Georgia, and MARTA is therefore a

20   citizen of the state of Georgia.

21           b.        For purposes of diversity jurisdiction, a corporation is a citizen of both

22   its state of incorporation and the state of its principal place of business. 28 U.S.C. § 1332(c)(1).

23   The First American Corporation is a California corporation with its principal place of business

24   in California, and it is therefore a citizen of the state of California for diversity purposes. A

25   limited liability company is deemed, for purposes of diversity jurisdiction, to be a citizen of the

26   state of citizenship of each of its members. *See Johnson*, 437 F.3d at 899. The sole member of

1  eAppraiseIT, LLC is First American Real Estate Solutions, LLC, a limited liability company

2  whose members are First American Real Estate Information Services, Inc., a California

3  corporation with its principal place of business in Texas, and Experian Information Solutions,

4  Inc., an Ohio corporation with its principal place of business in California.    Accordingly,

5  eAppraiseIT, LLC is a citizen of the states of California, Texas, and Ohio for diversity

6  purposes. 28 U.S.C. § 1332's diversity of citizenship requirement is therefore satisfied.

7      9.      Because there is complete diversity of citizenship, this is an action over which

8  this Court has original jurisdiction under 28 U.S.C. § 1332, and this action is therefore

9  removable to this Court pursuant to 28 U.S.C. §§ 1441 and 1446.

10  **REMOVAL IS PROPER PURSUANT TO THE CLASS ACTION FAIRNESS ACT.**

11      10.      This case is also subject to removal pursuant to the Class Action Fairness Act of

12  2005, 28 U.S.C. §§ 1332(d), 1453 ("CAFA"). CAFA grants federal courts original jurisdiction

13  over, and permits removal of, class actions in which: (1) the aggregate number of proposed

14  plaintiffs is 100 or more; (2) any member of a class of plaintiffs is a citizen of a state different

15  from any defendant, thus establishing so-called "minimal diversity"; (3) the primary defendants

16  are not states, state officials, or other governmental entities; and (4) the aggregate amount in

17  controversy of all of the putative class members' claims exceeds $5,000,000, exclusive of

18  interest and costs. *See* 28 U.S.C. §§ 1332(d)(2)(A), (d)(5)(A)-(B), and (d)(6).

19      11.      Those jurisdictional requirements are satisfied by the allegations contained in

20  Plaintiffs' Complaint.    Accordingly, this Court has original jurisdiction over this lawsuit

21  pursuant to 28 U.S.C. § 1332(d), and this lawsuit is subject to removal pursuant to 28 U.S.C. §

22  1453.

23      12.      Plaintiffs Seek Relief On Behalf Of A Class Consisting Of More Than 100

24  Members. In their Complaint, Plaintiffs purport to seek relief on behalf of a class consisting of

25  all persons or entities who purchased any of the 26 series of mortgage-backed securities

26  described in the Complaint. *See* Complaint ¶¶ 1, 24, 143. Plaintiffs affirmatively allege that

NOTICE OF REMOVAL - 4
CASE NO.

1   the proposed class consists of "thousands of members." Complaint ¶ 145.

2        13.    Plaintiffs Are Citizens Of Different States Than Defendants. As stated above,

3 on information and belief, Plaintiffs NOERS and MARTA are citizens of the states of

4 Louisiana and Georgia, respectively. Defendants are citizens of the states of California, Texas

5 and Ohio. The minimal diversity required by CAFA is present because Plaintiffs and

6 Defendants are citizens of different states. In addition, on information and belief, Plaintiffs'

7 proposed class consists of citizens of many different states, so minimal diversity would exist

8 even if Plaintiffs were not citizens of different states than Defendants.

9        14.    Defendants Are Not States, State Officials, Or Other Government Entities. As

10 stated above, The First American Corporation is a business corporation, and eAppraiseIT, LLC

11 is a limited liability company. The requirement of 28 U.S.C. § 1332(d)(5)(A) is therefore

12 satisfied.

13        15.    The $5,000,000 Amount-In-Controversy Requirement Is Satisfied. In their

14 Complaint, Plaintiffs purport to bring claims for, *inter alia*, both monetary and rescissory

15 damages on behalf of a proposed class consisting of purchasers of certain mortgage-backed

16 securities with a combined principal amount of nearly $40 billion. *See* Complaint ¶ 24. Thus,

17 Defendants believe in good faith that the aggregate amount of the class members' claims

18 exceeds $5,000,000, and the amount-in-controversy requirement of 28 U.S.C. § 1332(d)(6) is

19 satisfied.

20        16.    None of the exceptions or exclusions to jurisdiction under CAFA applies in this

21 case.

22        17.    Because all of CAFA's requirements are satisfied, this is an action over which

23 this Court has original jurisdiction under 28 U.S.C. § 1332(d), and this action is therefore

24 removable to this Court pursuant to 28 U.S.C. §§ 1441, 1446 and 1453.

25

26

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 | Tel: 206.839.4800

1    18.    A true and correct copy of this Notice of Removal is being served on Plaintiffs

2   through counsel, and is being filed with the clerk of the King County Superior Court.

3   *See* 28 U.S.C. § 1446(d).

4    19.    Pursuant to 28 U.S.C. § 1446(a) and Western District of Washington Civil Rule

5   101(b), and the conjoined verification of Stellman Keehnel, attached as **Exhibit A** is a copy of

6   all pleadings and documents filed in the state court lawsuit and served upon Defendants in the

7   state court lawsuit.

8        Based on the foregoing, Defendants hereby remove this action to this Court.

9        Dated this 30th day of January, 2009.

10

11

12

13

Stellman Keehnel, WSBA No. 9309
Christopher M. Huck, WSBA No. 34104
R. Omar Riojas, WSBA No. 35400
Bradley T. Meissner, WSBA No. 39592
DLA PIPER LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA 98104
Telephone: 206.839.4800
Fax: 206.839.4801
E-mail: stellman.keehnel@dlapiper.com
          christopher.huck@dlapiper.com
          omar.riojas@dlapiper.com
          bradley.meissner@dlapiper.com

Attorneys for Defendants

14

15

16

17

18

19

20

21

22

23

24

25

26

1

## **VERIFICATION**

2    Pursuant to Western District of Washington Civil Rule 101(b), the undersigned counsel

3  for defendants The First American Corporation and eAppraiseIT, LLC hereby verifies that the

4  pleadings and other documents attached hereto as **Exhibit A** are true and complete copies of

5  the pleadings and documents in the state court proceeding.

6    I declare under penalty of perjury under the laws of the state of Washington and under

7  the laws of the United States that the foregoing is true and correct.

8    EXECUTED at Seattle, Washington this 30th day of January, 2009.

9

10

11
    Stellman Keehnel, WSBA No. 9309

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

NOTICE OF REMOVAL - 7
CASE NO.

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 | Tel: 206.839.4800

**CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of January, 2009, I caused to be served a true and complete copy of the foregoing Notice of Removal on counsel of record at the address listed below by the method shown:

**Attorneys for Plaintiffs**

Robert D. Stewart                                    [ X ] Via Hand Delivery
Timothy M. Moran                                   [   ] Via U.S. Mail
Kipling Law Group PLLC                          [   ] Via Facsimile
3601 Fremont Avenue North, Suite 414        [   ] Via Email
Seattle, Washington 98103

stewart@kiplinglawgroup.com
moran@kiplinglawgroup.com

Joseph A. Fonti                                      [   ] Via Hand Delivery
Jonathan Gardner                                    [ X ] Via U.S. Mail
Labaton Sucharow LLP                             [   ] Via Facsimile
140 Broadway                                         [   ] Via Email
New York, New York 10005

jfonti@labaton.com
jgardner@labaton.com

John A. Kehoe                                         [   ] Via Hand Delivery
Sharan Nirmul                                        [ X ] Via U.S. Mail
Bharati O. Sharma                                   [   ] Via Facsimile
Barroway Topaz Kessler Meltzer & Check, LLP   [   ] Via Email
280 King of Prussia Road
Radnor, Pennsylvania 19087

jkehoe@btkmc.com
snirmul@btkmc.com
bsharma@btkmc.com

Signed at Seattle, Washington, this 30th day of January, 2009.

Patsy Howson

WEST21651250.1

NOTICE OF REMOVAL - 8
CASE NO.

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 | Tel: 206.839.4800

# EXHIBIT A

FILED

08 DEC 24 AM 11:59

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 08-2-43598-9 SEA

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| NEW ORLEANS EMPLOYEES' RETIREMENT SYSTEM and MARTA/ATU LOCAL 732 EMPLOYEES RETIREMENT PLAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE FIRST AMERICAN CORPORATION and FIRST AMERICAN eAPPRAISEIT, LLC,<br><br>Defendants. | **CLASS ACTION**<br><br>Case No.<br><br>CLASS ACTION COMPLAINT |

## SUMMARY OF THE ACTION

1.     This Complaint is brought by New Orleans Employees' Retirement System and

MARTA/ATU Local 732 Employees Retirement Plan (collectively "Plaintiffs"), on their own

behalf and as a class action on behalf of all persons and entities who purchased or otherwise

acquired certain mortgage backed securities (as defined below) between April 1, 2006 and

November 1, 2007, inclusive (the "Class Period"), pursuant or traceable to a Registration

Statement that WaMu Asset Acceptance Corp. ("WMAAC") filed with the Securities and

CLASS ACTION COMPLAINT - 1

1  Exchange Commission ("SEC") on December 30, 2005, as supplemented on January 3,
2  2006 (the "Registration Statement").

3      2.      During the Class Period, Washington Mutual Inc. ("Washington Mutual"), the
4  parent company of WMAAC, created and funded a variety of wholly-owned subsidiaries and
5  special purpose entities that originated, pooled, and sold residential mortgage loans to Plaintiffs
6  and other investors in the form of mortgage backed securities ("MBS").

7      3.      The MBS provided monthly distributions of interest and principal on the future
8  cash flows from the mortgages underlying the MBS. In other words, as borrowers made their
9  monthly mortgage payments, distributions were to be made to Plaintiffs and members of the
10  Class. Therefore, statements regarding the quality of the mortgage loans underlying the MBS
11  were extremely important to Plaintiffs and members of the Class.

12     4.      One of the fundamental metrics to determine the risk of an MBS is the amount of
13  the mortgage expressed as a ratio of the appraised value of the property underlying the mortgages,
14  otherwise known as the "loan-to-value" or "LTV" ratio. A low LTV ratio is less risky because
15  the more equity a borrower has in his or her home the less likely they are to default on their
16  mortgage. Conversely, a high LTV ratio presents more risk because the less equity a borrower
17  has in the home the more likely the borrower is to default on the loan. Worse, in an era of falling
18  property values, a high LTV ratio makes it increasingly likely that the outstanding mortgage
19  (amount unpaid) will exceed the value of the property collateralizing the loan.

20     5.      In this regard, the MBS sold to Plaintiffs and members of the Class purportedly
21  was comprised of mortgages that were issued only after the real-estate that collateralized the
22  loans had been subjected to objective and independent real-estate appraisals that met the
23  standards of the Uniform Standards of Professional Appraisal Practice ("USPAP"). Under
24  applicable minimum appraisal standards set forth in 12 C.F.R. § 564.4, all appraisals in regulated
25  transactions must conform to USPAP standards.

26     6.      Unbeknownst to Plaintiffs and other members of the Class, Defendants The First
27  American Corporation ("First American") and its wholly-owned subsidiary First American

CLASS ACTION COMPLAINT - 2

1  eAppraiseIT, LLC ("eAppraiseIT" or "EA") knowingly colluded with Washington Mutual to

2  artificially inflate the appraised values of properties, and thereby lower the overall LTV ratios on

3  the loans collateralizing the mortgages that were pooled together and sold to Plaintiffs and

4  members of the Class in the form of MBS.

5       7.     In so doing, First American and eAppraiseIT deliberately and recklessly violated

6  federal rules and regulations that require an appraisal to be "a written statement independently and

7  impartially prepared by a qualified appraiser setting forth an opinion as to the market value of an

8  adequately described property as of a specific date(s), supported by the presentation and analysis of

9  relevant market information." 12 C.F.R. § 564.2.

10       8.     First American and eAppraiseIT were motivated by pure greed. They generated

11  millions of dollars in fees from Washington Mutual in exchange for inflating the appraised value of

12  the properties collateralizing the mortgages that underlie the MBS, and thereby lowering the

13  overall LTV ratios. Specifically, for the third quarter 2006, First American reported $22 million

14  in revenue growth, which in large part was generated by its nearly exclusive appraisal business

15  performed for Washington Mutual.

16       9.     First American's and eAppraiseIT's scheme to inflate property appraisals and lower

17  LTV ratios first came to light in a complaint that New York Attorney General Andrew Cuomo (the

18  "NYAG") filed on November 1, 2007 (the "NYAG Complaint"). The NYAG Complaint alleged

19  that First American and eAppraiseIT had entered into an unlawful agreement with Washington

20  Mutual to overstate the value of residential mortgage property and artificially inflate real-estate

21  appraisals. According to the NYAG Complaint, by inflating the appraised value of property

22  relative to the loan, and thereby reducing LTV ratio, First American and eAppraiseIT were able to

23  earn lucrative fees while Washington Mutual was able to close home loans for borrowers that

24  otherwise would not have qualified.

25       10.    As a result of this misconduct, mortgages that collectively served as collateral for

26  the MBS were not originated in accordance with the stated underwriting standards of the USPAP

27  or in accordance with applicable regulations and laws. Instead, as the NYAG alleged, following

CLASS ACTION COMPLAINT - 3

1  the retention of eAppraiseIT, which was supposed to provide independent appraisals,

2  Washington Mutual and eAppraiseIT colluded to inflate property appraisals. According to a

3  November 1, 2007 press release issued by the NYAG:

> In April 2006, EA [eAppraiseIT] began providing appraisal services for WaMu,
> which became EA's biggest client. Within weeks, WaMu began complaining
> to EA that its appraisals were not high enough. WaMu pressured EA to employ
> exclusively a new panel of appraisers that WaMu hand-selected as "Proven
> Appraisers." *This set of appraisers was chosen by WaMu specifically
> because they inflated property appraisals. WaMu profited from these higher
> appraisals because they could close more home loans, at greater values.* Over
> the course of their relationship, between April 2006 and October 2007, EA
> provided approximately 262,000 appraisals for WaMu.
>
> *Attorney General Cuomo's investigation uncovered a series of e-mails between
> executives at EA, First American, and WaMu that show EA officials were
> willingly violating state and federal appraisal independence regulations to
> comply with WaMu's demands....*

12  (Emphasis added.)

13      11.    Because of First American's and eAppraiseIT's knowing, reckless and

14  negligent misconduct in inflating property appraisals, the Registration Statement and various

15  prospectuses that Washington Mutual and its affiliates filed with the SEC in connection with

16  offering the MBS to the investing public contained materially false and misleading statements

17  concerning the value, investment risks, and the LTV ratios of the mortgage pools

18  underlying the MBS.

19      12.    First American and eAppraiseIT were aware that their misconduct artificially

20  inflated the value of the MBS sold to Plaintiffs and members of the Class. As acknowledged by

21  First American on its website, *"Appraisals are used to establish a property's market value;*

22  *therefore, inaccurate or fraudulent appraisals damage the entire market and have negative*

23  *economic effects that are far reaching. First American's third-party unbiased valuations –*

24  *including insured valuations – are a resource real estate and lending professionals can turn to*

25  *for accuracy that benefits not only the homeowner and lender but our nation's economy."*

26  (Emphasis added). As First American further stated:

27

CLASS ACTION COMPLAINT - 4

1    VALUE TO OUR BUSINESS CUSTOMERS: Inaccurately appraised properties
     that make their way into lender portfolios increase the opportunity for
2    foreclosures. Our national services provide our mortgage lender customers with a
     welcomed resource for unbiased appraisals that satisfy increased regulatory
3    concerns, help to accurately determine value, and mitigate default risk.

4        13.    Defendants' systematic and deliberate artificial inflation of the values of the real-

5    estate that collateralized the mortgage pools underlying the MBS materially and adversely

6    impacted the value of the MBS, and Plaintiffs and members of the Class were damaged thereby.

7                          **JURISDICTION AND VENUE**

8        14.    This Court has subject matter jurisdiction over Plaintiffs' claims pursuant

9    to RCW 2.08.010.

10       15.    Personal jurisdiction and venue are properly with this Court pursuant to RCW

11   4.12.020 and 4.12.025 because the causes of action arose in King County and because

12   Defendants transacted business in King County at the time the causes of action arose.

13   Defendants purposefully availed themselves of the forum of King County by entering into an

14   agreement in this County to engage in the misconduct complained of herein, and by participating

15   in the loan origination of residential mortgage loans that were pooled and securitized for sale to

16   investors pursuant to the Registration Statements and various prospectuses that were prepared

17   and disseminated in this County.

18                               **PARTIES**

19       16.    Plaintiff, New Orleans Employees' Retirement System ("NOERS"), purchased

20   WaMu Mortgage Pass-Through Certificates Series 2006-AR14, WaMu Mortgage Pass-Through

21   Certificates Series 2006-AR16, and WaMu Mortgage Pass-Through Certificates Series 2006-

22   AR18, during the Class Period, which were issued pursuant to and/or traceable to the

23   Registration Statement and supplemental prospectuses that WaMu Asset Acceptance Corp.

24   ("WMAAC"), an affiliate of Washington Mutual, filed with the SEC on October 23, 2006,

25   November 17, 2006, and December 19, 2006, respectively.

26       17.    Plaintiff, MARTA/ATU Local 732 Employees Retirement Plan ("MARTA")

27   purchased WaMu Mortgage Pass-Through Certificates Series 2006-AR2, WaMu Mortgage Pass-

CLASS ACTION COMPLAINT - 5

1  Through Certificates Series 2006-AR16, WaMu Mortgage Pass-Through Certificates Series-

2  AR18, WaMu Mortgage Pass-Through Certificates Series 2007-HY2, WaMu Mortgage Pass-

3  Through Certificates Series 2007-HY4, and WaMu Mortgage Pass-Through Certificates Series

4  2007-HY7, during the Class Period, which were issued pursuant to and/or traceable to the

5  Registration Statement and supplemental prospectuses that WMAAC filed with the SEC

6  on February 16, 2006, November 17, 2006, December 19, 2006, February 14, 2007, March

7  23, 2007, and June 22, 2007, respectively.

8      18.    As a direct and proximate cause of the false and misleading statements alleged

9  herein, NOERS and MARTA suffered damages when the truth became known and the price of

10  the Certificates (as defined below) dropped. Furthermore, during the Class Period, MARTA

11  sold its WaMu Mortgage Pass-Through Certificates Series 2006-AR2 at a loss and was

12  damaged thereby.

13      19.    Defendant First American is a California corporation and has its executive offices

14  at 1 First American Way, Santa Ana, California 92707-5913. First American, through its

15  subsidiaries, provides business information and related products and services. First American

16  operates in a variety of business sectors, including Information and Outsourcing Solutions that

17  encompasses real estate appraisal services. First American routinely does business in the State of

18  Washington directly and through its subsidiaries.

19      20.    Defendant eAppraiseIT is a wholly-owned subsidiary of First American and has its

20  executive headquarters at 12395 First American Way, Poway, California 92064. eAppraiseIT

21  provides real estate appraisal services to savings and loans, banks, and other lending professionals.

22  Upon information and belief, during the Class Period, eAppraiseIT regularly conducted business

23  and appraised real estate in the State of Washington.

24      21.    First American and eAppraiseIT are collectively referred to herein as

25  "Defendants."

26

27

CLASS ACTION COMPLAINT - 6

**RELEVANT NON-PARTIES**

22.     During the Class Period, Washington Mutual was a Washington corporation with its principal executive offices located at 1301 Second Avenue, Seattle, Washington. Washington Mutual's Home Loans Group segment originated and serviced home loans, serviced portfolios of home equity loans and lines of credit, originated and provided mortgage loans to borrowers, and provided financing and other banking services to mortgage bankers for the origination of mortgage loans. Washington Mutual filed a petition for bankruptcy on September 26, 2008. But for the bankruptcy filing, Washington Mutual would be named as a defendant in this action.

23.     Other Washington Mutual subsidiaries relevant to this action include Washington Mutual Bank ("WMB"). WMB served various roles in the formation and securitization of the MBS, including as "Sponsor" of the "Trusts" that were formed to create the MBS. On September 25, 2008 the Office of Thrift Supervision ("OTS") seized WMB and placed it into the receivership of the Federal Deposit Insurance Corporation. Washington Mutual Mortgage Securities Corp. ("WMMSC") is a wholly-owned subsidiary of WMB that served as "Servicer" of the Trusts. WMAAC is a wholly-owned subsidiary of WMB that served as the "Depositor" in the securitization of the Trusts and was the "Issuer" of the "Certificates".

**THE TRUSTS**

24.     Collectively, the Trusts created to issue the Certificates to investors are:

| Trusts | Principal Amount |
|---|---|
| WaMu Mortgage Pass-Through Certificates Series 2006-AR1 Trust | $1,474,488,100 |
| WaMu Mortgage Pass-Through Certificates Series 2006-AR2 Trust | $332,239,100 |
| WaMu Mortgage Pass-Through Certificates Series 2006-AR3 Trust | $990,012,100 |

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

| Trusts | Principal Amount |
|---|---|
| WaMu Mortgage Pass-Through Certificates Series 2006-AR4 Trust | $909,714,200 |
| WaMu Mortgage Pass-Through Certificates Series 2006-AR5 Trust | $778,198,100 |
| WaMu Mortgage Pass-Through Certificates Series 2006-AR6 Trust | $448,667,100 |
| WaMu Mortgage Pass-Through Certificates Series 2006-AR7 Trust | $1,255,863,100 |
| WaMu Mortgage Pass-Through Certificates Series 2006-AR8 Trust | $1,208,887,100 |
| WaMu Mortgage Pass-Through Certificates Series 2006-AR9 Trust | $1,402,610,100 |
| WaMu Mortgage Pass-Through Certificates Series 2006-AR10 Trust | $1,328,647,642 |
| WaMu Mortgage Pass-Through Certificates Series 2006-AR11 Trust | $1,615,625,100 |
| WaMu Mortgage Pass-Through Certificates Series 2006-AR12 Trust | $1,694,778,749 |
| WaMu Mortgage Pass-Through Certificates Series 2006-AR13 Trust | $1,468,050,100 |
| WaMu Mortgage Pass-Through Certificates Series 2006-AR14 Trust | $1,683,891,100 |
| WaMu Mortgage Pass-Through Certificates Series 2006-AR15 Trust | $868,034,100 |

CLASS ACTION COMPLAINT - 8

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

| Trusts | Principal Amount |
|---|---|
| WaMu Mortgage Pass-Through Certificates Series 2006-AR16 Trust | $1,444,737,100 |
| WaMu Mortgage Pass-Through Certificates Series 2006-AR17 Trust | $1,124,131,100 |
| WaMu Mortgage Pass-Through Certificates Series 2006-AR18 Trust | $1,554,983,100 |
| WaMu Mortgage Pass-Through Certificates Series 2006-AR19 Trust | $1,187,632,100 |
| WaMu Mortgage Pass-Through Certificates Series 2007-HY1 Trust | $3,007,814,100 |
| WaMu Mortgage Pass-Through Certificates Series 2007-HY2 Trust | $1,570,407,100 |
| WaMu Mortgage Pass-Through Certificates Series 2007-HY3 Trust | $2,970,344,100 |
| WaMu Mortgage Pass-Through Certificates Series 2007-HY4 Trust | $1,684,955,100 |
| WaMu Mortgage Pass-Through Certificates Series 2007-HY5 Trust | $1,619,028,100 |
| WaMu Mortgage Pass-Through Certificates Series 2007-HY6 Trust | $3,417,433,100 |
| WaMu Mortgage Pass-Through Certificates Series 2007-HY7 Trust | $2,795,936,100 |
| Total Principal Amount of Certificates | $39,837,106,891 |

CLASS ACTION COMPLAINT - 9

1            **SUBSTANTIVE ALLEGATIONS**

2    **A.    Background**

3          **1.    The Mortgage Industry and Mortgage Securitization**

4          25.    The mortgage industry was traditionally characterized by a lending institution

5    (*i.e.*, the loan originator) holding a direct interest in the property as collateral for a mortgage in

6    the event the borrower defaulted on the mortgage. Under the traditional model, the mortgage

7    originator held the note until it matured and was exposed to the risk that the borrower would fail

8    to repay the mortgage. As such, under the traditional model, the mortgage originator had a

9    financial incentive to obtain an accurate property appraisal before issuing a mortgage to ensure

10   that the mortgage was adequately collateralized in the event the borrower defaulted and the

11   property was foreclosed.

12         26.    Over the past several decades, the traditional model of mortgage origination

13   changed. After a mortgage originator issues a mortgage to a borrower, the originator typically

14   sells the mortgage in the financial markets to third-party financial institutions. By selling the

15   mortgage, the originator obtains fees in connection with the issuance of the mortgage, receives

16   upfront proceeds or cash when it sells the mortgage into the financial markets, and thereby has

17   new capital to issue more mortgages. The mortgages sold into the financial markets are

18   typically pooled together and securitized into what are commonly referred to as "mortgage-

19   backed securities" or "MBS". In addition to receiving cash from the sale of the mortgage, the

20   loan originator no longer holds the risk that the borrower may default on the loan; that risk is

21   transferred with the mortgages to investors who purchase the MBS.

22         27.    The Trusts formed to securitize and issue the MBS pool together the cash-flow

23   received when mortgage borrowers make interest and principal payments as required by the

24   underlying mortgages. That cash is then distributed to the holders of the Certificates in order of

25   priority based on the specific tranche held. The highest tranche (also referred to as the senior

26   tranche) is first to receive its share of the mortgage proceeds. Since the senior tranche is *first* to

27   receive payments, it is also the *last* tranche to absorb any losses should mortgage-borrowers

CLASS ACTION COMPLAINT - 10

1  become delinquent or default on their mortgage. As a result, the senior tranches of most

2  MBS were rated AAA by the rating agencies (Moody's, Fitch, and S&P) (collectively, the "Rating

3  Agencies"). After the senior tranche, the middle tranches (referred to as mezzanine tranches) next

4  receive their share of the proceeds. In accordance with their order of priority, the mezzanine

5  tranches were generally rated from AA to BB by the Rating Agencies. The process of

6  distributing the mortgage proceeds continues down the tranches through to the bottom tranches,

7  referred to as equity tranches. This process is repeated each month and all investors receive the

8  payments owed to them so long as the mortgage-borrowers are current on their mortgages.

9      28.     The Certificates sold to Plaintiffs and other Class members were sold pursuant to

10  a prospectus that was affixed to the Registration Statement and a series of supplemental

11  prospectuses (the "Prospectuses") filed with the SEC in accordance with Rule 424(b)(5), as

12  identified below:

13          (a)    Prospectus Supplement for WaMu Mortgage Pass Through
                   Certificates, Series 2006-AR1, filed with the SEC on
14                 1/26/2006;

15          (b)    Prospectus Supplement for WaMu Mortgage Pass Through
                   Certificates, Series 2006-AR2, filed with the SEC on
16                 2/16/2006;

17
            (c)    Prospectus Supplement for WaMu Mortgage Pass Through
18                 Certificates, Series 2006-AR3, filed with the SEC on
                   2/22/2006;
19
            (d)    Prospectus Supplement for WaMu Mortgage Pass Through
20                 Certificates, Series 2006-AR4, filed with the SEC on
                   4/21/2006;
21
            (e)    Prospectus Supplement for WaMu Mortgage Pass Through
22                 Certificates, Series 2006- AR5, filed with the SEC on
23                 5/24/2006;

24          (f)    Prospectus Supplement for WaMu Mortgage Pass Through
                   Certificates, Series 2006-AR6, filed with the SEC on
25                 6/23/2006;

26
            (g)    Prospectus Supplement for WaMu Mortgage Pass Through
27                 Certificates, Series 2006-AR7, filed with the SEC on

CLASS ACTION COMPLAINT - 11

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1          6/26/2006;

2     (h)    Prospectus Supplement for WaMu Mortgage Pass Through
3            Certificates, Series 2006-AR8, filed with the SEC on
             7/25/2006;

4     (i)    Prospectus Supplement for WaMu Mortgage Pass Through
5            Certificates, Series 2006-AR9, filed with the SEC on
             7/25/2006;

6
7     (j)    Prospectus Supplement for WaMu Mortgage Pass Through
             Certificates, Series 2006-AR10, filed with the SEC on
8            8/23/2006;

9     (k)    Prospectus Supplement for WaMu Mortgage Pass Through
             Certificates, Series 2006-AR11, filed with the SEC on
10           8/23/2006;

11    (l)    Prospectus Supplement for WaMu Mortgage Pass Through
             Certificates, Series 2006-AR12, filed with the SEC on
12           9/25/2006;

13    (m)    Prospectus Supplement for WaMu Mortgage Pass Through
14           Certificates, Series 2006-AR-13, filed with the SEC on
             9/26/2006;

15    (n)    Prospectus Supplement for WaMu Mortgage Pass Through
16           Certificates, Series 2006-AR14, filed with the SEC on
             10/23/2006;

17
18    (o)    Prospectus Supplement for WaMu Mortgage Pass Through
             Certificates, Series 2006-AR15, filed with the SEC on
19           10/24/2006;

20    (p)    Prospectus Supplement for WaMu Mortgage Pass Through
             Certificates, Series 2006-AR16, filed with the SEC on
21           11/17/2006;

22    (q)    Prospectus Supplement for WaMu Mortgage Pass Through
             Certificates, Series 2006-AR17, filed with the SEC on
23           11/20/2006;

24    (r)    Prospectus Supplement for WaMu Mortgage Pass Through
25           Certificates, Series 2006-AR18, filed with the SEC on
             12/19/2006;

26
27    (s)    Prospectus Supplement for WaMu Mortgage Pass Through
             Certificates, Series 2006-AR19, filed with the SEC on

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

12/20/2006;

(t)     Prospectus for Supplement WaMu Mortgage Pass-Through Certificates, Series 2007-HY1, filed with the SEC on 1/23/2007;

(u)     Prospectus Supplement for WaMu Mortgage Pass-Through Certificates, Series 2007-HY2, filed with the SEC on 2/14/2007;

(v)     Prospectus Supplement for WaMu Mortgage Pass-Through Certificates, Series 2007-HY3, filed with the SEC on 2/26/2007;

(w)     Prospectus Supplement for WaMu Mortgage Pass-Through Certificates, Series 2007-HY4, filed with the SEC on 3/23/2007;

(x)     Prospectus Supplement for WaMu Mortgage Pass-Through Certificates, Series 2007-HY5, filed with the SEC on 4/24/2007;

(y)     Prospectus Supplement for WaMu Mortgage Pass-Through Certificates, Series 2007-HY6, filed with the SEC on 5/22/2007; and

(z)     Prospectus Supplement for WaMu Mortgage Pass-Through Certificates, Series 2007-HY7, filed with the SEC on 6/22/2007.

29.     With respect to the Certificates at issue here, the Registration Statement and Prospectuses filed with the SEC in connection with the registration and sale of the certificates contained substantially similar material statements concerning, *inter alia*: (i) the underwriting process used for mortgages held by the Trusts; (ii) the value of the real-estate underlying the Trusts; (iii) the independence of the real-estate appraiser used to appraise the real-estate; (iv) the supposed strict adherence to USPAP standards used in the appraisal process; and (v) the LTV ratios.

2.     **Importance of Objective, Unbiased, and Accurate Property Appraisals**

30.     As acknowledged by First American, independent and accurate real-estate appraisals are essential to the entire mortgage lending and securitization process, providing borrowers,

CLASS ACTION COMPLAINT - 13

1  lenders, and investors in MBS with supposedly independent and accurate assessments of the

2  value of the mortgaged properties. Accurate appraisals ensure that a residential mortgage or

3  home-equity loan is not under-collateralized, thereby protecting borrowers from financially over-

4  extending themselves and protecting lenders and investors in MBS in the event a borrower

5  defaults on a loan. Accurate appraisals also provide investors with a basis for assessing the

6  price and risk of MBS.

7      31.    Defendants First American and eAppraiseIT recognize the vital role independent

8  appraisals play in protecting homeowners, lenders and investors. As First American explained in

9  its 2006 Annual Report:

> Appraisals are used to establish a property's market value; therefore, inaccurate or
> fraudulent appraisals damage the entire market and have negative economic
> effects that are far-reaching. First American's third-party, unbiased valuations –
> including insured valuations – are a resource real estate and lending professionals
> can turn to for accuracy that benefits not only the homeowner and lender, but our
> nation's economy.
>
> *Value to Consumers*: Homeowners, who place a large investment in their
> property, can be particularly victimized by appraisal fraud. First American's
> warranted valuations, which are supported by our third-party perspective and
> backed by more than a century of integrity, virtually eliminate risk from this type
> of fraud.
>
> *Value to our Business Customers*: Inaccurately appraised properties that make
> their way into lender portfolios increase the opportunity for foreclosures. Our
> national services provide our mortgage lender customers with a welcomed
> resource for unbiased appraisals that satisfy increased regulatory concerns, help to
> accurately determine value, and mitigate default risk.

19     32.    An accurate appraisal is also critical in determining the LTV ratio for the

20  mortgaged property, which is a financial metric that Wall Street analysts and investors

21  commonly use when evaluating the price and risk of MBS. An LTV ratio is directly

22  dependent on the appraisal value because the LTV ratio is a mathematical calculation that

23  expresses the amount of a mortgage as a percentage of the total appraised value of the

24  property. For example, if a borrower seeks to borrow $90,000 to purchase a house worth

25  $100,000, the LTV ratio is $90,000/$100,000, or 90 percent. If, however, the appraised value of

26

27

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1    the house is artificially increased to $120,000, the LTV ratio drops to just 75 percent

2    ($90,000/$120,000).

3        33.    From a lender's perspective, and from the perspective of an investor in MBS, a

4    high LTV ratio is riskier because a borrower with a small equity position in a property has less

5    to lose if he/she defaults on the loan.  Worse, particularly in an era of falling housing prices, a

6    high LTV ratio creates the heightened risk that, should the borrower default, the amount of

7    the outstanding loan may exceed the value of the property.

8        34.    Indeed, in its 2006 annual report filed on Form 10-K with the SEC on March 1,

9    2007, Washington Mutual acknowledged that the less equity a borrower has in a home, the

10   greater the credit risk of the borrower:

> *Home* equity loans and lines of credit with combined loan-to-value ratios of greater than 80 percent also expose the Company to greater credit risk than home loans with loan-to-value ratios of 80 percent or less at origination.  This greater credit risk arises because, in general, both default risk and the severity of risk is higher when borrowers have less equity in their homes.

14       35.    A material representation in the Registration Statement and Prospectuses was that

15   the real-estate collateralizing the mortgages had been subjected to real-estate appraisals performed

16   by independent, objective, and unbiased appraisers, pursuant to the stringent standards of the

17   USPAP.  Accurate and independent home appraisals are a critical requirement in residential loan

18   underwriting and in valuing the MBS in which the loans are pooled and sold to investors. As

19   federal regulations emphasize:

> The soundness of a savings association's mortgage loans and real estate investments…depends to a great extent upon the adequacy of the loan underwriting used to support these transactions. *An appraisal standard is one of several critical components of a sound underwriting policy because appraisal reports contain estimates of the value of collateral held or assets owned.*

23   12 C.F.R. § 564.8(a) (emphasis in original).  In an effort to prevent improper collusion between

24   appraisers and loan originators, USPAP guidelines also state that client (i.e. loan originators)

25   objectives must never affect the appraiser's independence or objectivity.

26       36.    Because of the importance of appraisals in the home lending and MBS markets,

27   state and federal statutes and regulations require that appraisals be accurate and independent.

CLASS ACTION COMPLAINT - 15

1    Specifically, USPAP requires appraisers to: "…perform assignments with impartiality,

2    objectivity, and independence, and without accommodation of personal interests. In appraisal

3    practice, an appraiser must not perform as an advocate for any party or issue." USPAP Ethics

4    Rule (Conduct). USPAP rules also provide that "[a]n appraiser must not accept an assignment

5    that includes the reporting of predetermined opinions and conclusions." In addition, each

6    appraisal report must contain a certification signed by the appraiser, stating that his or her

7    compensation for completing the assignment is not contingent upon the development or reporting

8    of a predetermined value or direction in value that favors the cause of the client. USPAP was

9    incorporated into federal law by 12 C.F.R. § 34.44.

10          37.    The USPAP requires, *inter alia,* that:

11          An appraiser must perform assignments with impartiality, objectivity, and
             independence, and without accommodation of personal interests;

12

13          In appraisal practice, an appraiser must not perform as an advocate for any party
             or issue;

14          An appraiser must not accept an assignment that includes the reporting of
             predetermined opinions and conclusions; and

15

16          It is unethical for an appraiser to accept an assignment, or to have a compensation
             arrangement for an assignment, that is contingent on any of the following: 1. the
             reporting of a predetermined result (e.g., opinion of value); 2. a direction in
17          assignment results that favors the cause of the client; 3. the amount of a value
             opinion; 4. the attainment of a stipulated result; or 5. the occurrence of a
18          subsequent event directly related to the appraiser's opinions and specific to the
             assignment's purpose.

19

20          38.    In 2005, federal regulators, including the OTS, published guidelines regarding

21    "Appraisal Regulations and the Interagency Statement on Independent Appraisal and Evaluation

22    Functions" requiring, among other things, that: (1) loan production staff should not select

23    appraisers; (2) **loan production staff should not be involved in developing or maintaining

24    lists of appraisers**; and (3) information provided by the regulated institution should not unduly

25    influence an appraiser or in any way suggest the property's value.

26          39.    Defendants addressed implementation of the new guidelines in a June 1, 2005

27    press release quoting Diane Valadez, Sr. VP of Valuation Consulting at eAppraiseIT:

CLASS ACTION COMPLAINT - 16

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

The predominant compliance concern requiring immediate attention is ensuing that the loan production staff is not involved in selecting, monitoring and approving appraisers.

"As an independent valuation company, eAppraiseIT is committed to helping our lenders implement a plan that conforms to the new guidelines," said Valadez. "We have a variety of tools and services that can ensure compliance in the wholesale, correspondent, and retail environments.

40.    The Registration Statement and Prospectuses included numerous representations about the quality of the mortgage loans underlying each of the Trusts, including the LTV ratios used to determine whether the underlying collateral was adequate, and the appraisal standards used to value the real-estate that collateralized the mortgages. Because the LTV ratio is directly dependent on the appraisal value, any error or fraud related to an appraisal will directly affect the loan's LTV ratio.

41.    The Prospectuses filed with the SEC in connection with the sale of Certificates to Plaintiffs and members of the Class also made numerous representations regarding purportedly favorable LTV ratios for mortgage loans supporting the Certificates. Based in part on these representations, Washington Mutual and its affiliates obtained credit ratings for each of the Certificates from nationally recognized statistical ratings organizations such as Standard & Poors ("S&P"), Moody's Corp. ("Moody's") and Fitch, Inc. ("Fitch"). In rating the Certificates, S&P, Moody's and Fitch all relied upon the reported LTV ratios for the Certificates. This information was essential in valuing the investment quality of the Certificates. These credit ratings were also included in the Prospectuses filed with the SEC in connection with the sale of the Certificates.

42.    The Registration Statement assured that:

The adequacy of the mortgaged property as collateral generally is determined by an appraisal made in accordance with pre-established appraisal guidelines. At origination, all appraisals are required to conform to the Uniform Standards of Professional Appraisal Practice adopted by the Appraisal Standards Board of the Appraisal Foundation, and are made on forms acceptable to Fannie Mae and/or Freddie Mac.

43.    The Prospectuses further stated that:

The adequacy of the mortgaged property as collateral generally is determined by an appraisal made in accordance with pre-established appraisal guidelines. At origination, *all appraisals are required to conform to the Uniform Standards of*

CLASS ACTION COMPLAINT - 17

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

*Professional Appraisal Practice* adopted by the Appraisal Standards Board of the Appraisal Foundation, and are made on forms acceptable to Fannie Mae and/or Freddie Mac. Appraisers may be staff appraisers employed by Washington Mutual Bank or independent appraisers selected in accordance with the pre-established appraisal guidelines. Such guidelines generally require that the appraiser, or an agent on its behalf, personally inspect the property and verify whether the property is in adequate condition and, if the property is new construction, whether it is substantially completed. However, in the case of mortgage loans underwritten through an automated underwriting system, an automated valuation model may be used, under which an appraiser does not inspect the property. *In either case, the valuation normally is based upon a market data analysis of recent sales of comparable properties and, in some cases, a replacement cost analysis based on the current cost of constructing or purchasing a similar property.* In the case of a streamline refinance, the appraisal guidelines may permit the property value obtained for an existing mortgage loan (or a mortgage loan which was previously refinanced) to be used.

(Emphasis added.)

44.    Contrary to these representations, the appraisals eAppraiseIT performed for Washington Mutual did not conform to the USPAP standards and deliberately did not portray accurate market data and valuation. Because Washington Mutual's profits were determined largely by the quantity of the loans successfully closed and not on the quality of those loans, Washington Mutual joined in concert and entered into an unlawful agreement with eAppraiseIT to reach artificially appraised values to "hit" LTV ratios necessary and allow more loans to close for pooling and sale to the securitization market.

45.    First American and eAppraiseIT knew that the artificially-inflated appraisals were for mortgage loans originated by Washington Mutual that would be securitized and sold to Plaintiffs and members of the Class in the form of MBS. For example, in filings with the Securities and Exchange Commission (the "SEC") in early 2007, First American acknowledged that its operating revenue had been adversely impacted "*by the decline in mortgage originations and the tightening of the credit markets which led to a decrease in mortgage securitization activity and therefore the demand for some of the mortgage analytic product offerings.*" (Emphasis added.)

46.    During the second and third quarters of 2007, First American further acknowledged that it had taken a huge "hit" to its revenue because of a substantial decline in its

CLASS ACTION COMPLAINT - 18

1    appraisal valuation business caused by material slowdowns in securitizations and MBS activity

2    related to customer failures in the sub-prime marketplace. First American concealed its role in

3    the collapse of the sub-prime market from phony appraisals of properties that were inadequate to

4    satisfy foreclosed sub-prime mortgage loans, and mitigate default risks for investors in MBS.

5    **B.    Details of the Conspiracy**

6        **1.    The New York Attorney General Complaint**

7        47.    As it has now been revealed, First American and eAppraiseIT colluded with

8    Washington Mutual to violate USPAP guidelines and inflate the value of the properties

9    collateralizing the mortgages that were securitized and sold to Plaintiffs and members of the

10   Class.

11       48.    An investigation by the NYAG exposed Defendants' practices of inflating

12   appraisals of properties securing the mortgages originated by Washington Mutual. By virtue of

13   these improper practices, Washington Mutual grew its market share in the origination,

14   securitization, and underwriting of residential loans, while simultaneously passing the risk of

15   mortgage defaults to those who invested in the securities created from those mortgages – *i.e.*, the

16   Certificates. First American and eAppraiseIT benefitted from the scheme by having generated

17   millions of dollars in fees and additional business from Washington Mutual in exchange for

18   inflating property appraisals that collateralized the mortgages underlying the MBS sold to

19   Plaintiffs and members of the Class.

20       49.    On November 1, 2007, the NYAG filed a lawsuit against eAppraiseIT and its

21   parent corporation, First American, alleging that eAppraiseIT appraisers deliberately and

22   unlawfully inflated real-estate appraisals they performed for Washington Mutual. *See The People*

23   *of the State of New York by Andrew Cuomo v. First American Corporation and First American*

24   *eAppraiseIT,* No. 07-406796 (N.Y. Sup. Ct. Filed Nov. 1, 2007). The NYAG Complaint

25   provides specific details about the collusion among First American, eAppraiseIT and

26   Washington Mutual, to inflate real estate appraisals.

27

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

50.     Prior to and during the Class Period, Washington Mutual systematically encouraged its in-house appraisers to inflate appraisal values for loans. According to a news article of interviews of its employees, as reported in *The Seattle Times* on April 15, 2008 in an article titled "Appraisers Say WaMu Cut Corners to Increase Its Mortgage Business," from as early as 2001 it was commonplace for Washington Mutual to alter real-estate appraisal values so that loans would close.

51.     When federal regulations, implemented in 2006, required that all mortgage originators use third-party appraisers to value their mortgaged properties (and thereby ensure appraiser independence), Washington Mutual sought to continue its practice of inflating appraisals by colluding with eAppraiseIT, a purportedly independent third-party appraiser that Washington Mutual had retained because of its willingness to deliver appraisals at values necessary for loans to close and be sold to investors.

52.     According to the NYAG Complaint, in order to circumvent federal regulations mandating independence by appraisers from loan originators, Washington Mutual selected eAppraiseIT to provide property appraisals for Washington Mutual. By using eAppraiseIT, Washington Mutual superficially met the appraiser independence requirements. However, behind the scenes, as set forth below, Washington Mutual, First American and eAppraiseIT colluded to control the appraisal process and inflate appraisals.

        **a.    eAppraiseIT's Agreement with Washington Mutual to Improperly Manipulate "Reconsideration of Value" ("ROV") Procedures**

53.     eAppraiseIT began working with Washington Mutual in the spring of 2006, and Washington Mutual was one of eAppraiseIT's biggest clients. eAppraiseIT conducted more than 260,000 appraisals for Washington Mutual, between April 2006 and October 2007, generating over $50 million in fees.

54.     eAppraiseIT's in-house and third-party appraisers included appraisers identified as "preferred appraisers" by Washington Mutual to conduct appraisals of residential property for Washington Mutual. By at least June 2006, eAppraiseIT had hired approximately 50 former

CLASS ACTION COMPLAINT - 20

1  Washington Mutual employees as staff appraisers and as "Appraisal Business Managers"
2  ("ABMs"). According to the NYAG Complaint, at Washington Mutual's request, the ABMs were
3  given authority to override and revise the values reached by third-party appraisers. Former
4  Washington Mutual employees comprised approximately one-third of eAppraiseIT's staff
5  appraisers and all of eAppraiseIT's ABMs were former Washington Mutual employees. In fact,
6  eAppraiseIT's President advised First American that "we have hired and on boarded many of
7  Washington Mutual's regional managers and appraisers last week. They will be instrumental in
8  our relational and operational success with the sales force."

9      55.    The terms of the contract between Washington Mutual and eAppraiseIT expressly
10 allowed Washington Mutual to challenge an eAppraiseIT appraiser's valuation conclusions by
11 requesting a "reconsideration of value" ('ROV') when the Washington Mutual loan staff
12 disagreed with an appraised home value. Washington Mutual routinely and systematically
13 asked eAppraiseIT appraisers to reconsider and raise the value assigned to a home to "hit"
14 a pre-designated number necessary for the loan to close and be pooled with other loans and
15 sold. ROVs were employed by Washington Mutual and eAppraiseIT to overstate property
16 values and obtain artificially-lowered LTV ratios for securitized mortgage loans.

17     56.    The NYAG Complaint quotes numerous e-mails and communications
18 obtained by the NYAG through subpoenas issued to eAppraiseIT. These e-mail
19 communications by high-level executives at eAppraiseIT, First American and Washington
20 Mutual demonstrate a pattern of improper conduct and agreements between eAppraiseIT,
21 First American and Washington Mutual to artificially inflate property values in order to
22 decrease LTV ratios to close home mortgages that were pooled and securitized into MBS
23 that were sold to Plaintiffs and members of the Class. For example, in an email dated
24 September 29, 2006, a Washington Mutual executive wrote to a senior executive at eAppraiseIT to
25 define eAppraiseIT's responsibilities as to the ROVs and value disputes. In the September 29
26 email, the Washington Mutual executive wrote:

27

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1
2
3
4

. . . the four appraisers/reviewers would be directly involved in escalations dealing with: ROVs, Valuation issues where the purchase price and appraised value differ with no reconciliations/justifications by the appraiser, Value cuts which we continue to receive from your third party reviewers (Wholesale), *proactively making a decision to override and correct the third party appraiser's value or reviewer's value cut,* when considered appropriate and supported...

(Emphasis added.)

5
6

              **b.**     **First American and eAppraiseIT Agree to Inflate Appraisals for Washington Mutual**

7         57.     Shortly after eAppraiseIT began providing appraisals for Washington Mutual,

8   Washington Mutual's loan production staff began complaining that eAppraiseIT appraisers

9   were not "hitting value." In other words, they were appraising homes at an LTV ratio too

10  high to permit loans to close.

11        58.     According to the NYAG Complaint, on August 9, 2006, eAppraiseIT's

12  President stated to Washington Mutual executives: "We need to address the ROV issue . . . .

13  Many lenders in today's environment . . . have no ROV issue. The value is the value. I don't

14  know if WAMU production will go for that . . . . The WAMU internal staff we are speaking with

15  admonish us to be certain we solve the ROV issue quickly or we will all be in for some pretty

16  rough seas."

17        59.     Shortly thereafter, on August 15, 2006, as alleged in the NYAG Complaint, the

18  Executive Vice President of eAppraiseIT advised the President that Washington Mutual's loan

19  officers "pressure[d] WaMu's internal appraisal field managers for an 'extra few thousand,' or

20  'tell[]them specifically what they needed,' or would ask for ROVs on the same property.'" The

21  "Executive Vice President explained that '[h]aving loan officers ask for a few thousand dollars

22  because it is within the range is something that we currently do not do for any client....*It is also*

23  *direct pressure on the appraiser for a higher value without any additional information.*'"

24  (Emphasis added.)

25
26
27

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1

2

        **c.**    **First American Agrees to Washington Mutual's Appraisal**
                **Demands in Exchange for Future Business**

3

4

5

6

    60.    First American, eAppraiseIT's parent company, became directly involved in

negotiating *quid-pro-quo* agreements to inflate appraisals for Washington Mutual in exchange

for commitments for additional business from Washington Mutual.  In a September 27, 2006

email exchange, a First American executive wrote:

7

8

9

> [WaMu] and I discussed our long-term relationship including the money we have
> on deposit there and our other current business relationships.  I told him we would
> like to expand those relationships.  And in exact terms, we would like one half of
> their flood business, which they currently give 100% to [Corporation A] and their
> tax business is divided 3 ways among [3 corporations] and that we would like to
> take [Corporation A's] tax business.

10

Washington Mutual's response, according to the executive, was:

11

12

> He said that if the appraisal issues are resolved and things are working well he
> would welcome conversations about expanding our relationship including tax and
> flood.

13

    61.    Washington Mutual not only conditioned providing additional business on

14

eAppraiseIT's acceptance of Washington Mutual's appraisal demands, but also in cases where

15

eAppraiseIT employees failed to adhere to Washington Mutual's inappropriate requests,

16

appraisals were simply reassigned to other companies.  One example of this conduct

17

included in the NYAG states that: "[o]n October 5, 2006, in response to complaints from the

18

WaMu production team – particularly in Northern California, eAppraiseIT prepared a

19

'WaMu Improvement Implementation Plan.'  The plan was unsuccessful, however.  By

20

December 2006, WaMu had reassigned all of its Northern California appraisal work to LSI,"

21

which was a direct competitor of eAppraiseIT.

22

23

        **d.**    **eAppraiseIT Improperly allows Washington Mutual to Pre-**
                **Select Which Appraisers eAppraiseIT Would Use for**
                **Washington Mutual Related Appraisals**

24

    62.    Concerned that appraisals provided by certain appraisers selected by eAppraiseIT

25

were not being inflated enough to close its mortgage loans, Washington Mutual, by February

26

2007, had insisted that eAppraiseIT use a group of appraisers **hand selected** by Washington

27

Mutual for all appraisals performed on behalf of Washington Mutual.  The designated group

CLASS ACTION COMPLAINT - 23

1    of individual appraisers was collectively referred to as the "Proven Panel" or "Proven

2    Appraisers." A press release issued by the NYAG on November 1, 2007 stated that, "This set of

3    appraisers was *chosen by WaMu specifically because they inflated property appraisals.* WaMu

4    profited from these higher appraisals because [it] could close more home loans, at greater

5    values." (Emphasis added.)

6        63.    In a February 22, 2007 email, eAppraiseIT's President explained to other senior

7    First American executives the motives behind Washington Mutual demanding the use of the

8    "Proven Appraisers." In the email, eAppraiseIT's President wrote, "We had a joint call with

9    Wamu and LSI today. The attached document outlines the new appraiser assigning process. In

10   short, we will now assign all Wamu's work to Wamu's 'Proven Appraisers' . . . . We will pay

11   their appraisers whatever they demand. *Performance ratings to retain position as a Wamu*

12   *Proven Appraiser will be based on how many come in on value, negating a need for an ROV.*"

13   (Emphasis added.)

14       64.    Defendant eAppraiseIT improperly gave complete control over the Proven

15   Panel to Washington Mutual --Washington Mutual selected the members of the Proven

16   Panel, assigned specific members of the Panel work and in cases where members of the Panel

17   refused to increase appraised values per Washington Mutual's demands, Washington Mutual

18   removed appraisers from the Proven Panel. eAppraiseIT's allowance of Washington Mutual to

19   create and direct work to members of the Proven Panel directly violated several laws, including

20   USPAP and Office of Thrift Supervision regulations which explicitly state that, "Loan

21   production staff should not select appraisers."

22       65.    Despite the inherent conflicts created by the Proven Panel system, eAppraiseIT

23   agreed to Washington Mutual's requests. Moreover, First American was fully aware of this

24   agreement. In an email on February 22, 2007, eAppraiseIT's President reported to senior

25   executives at First American: **"we have agreed to roll over and just do it."** He explained that

26   "we were willing to live with the change if they would back us up with the appraisers and tell

27   them that simply because they are rated as Gold Preferred does not mean that they can grab all

CLASS ACTION COMPLAINT - 24

1  the fees. They agreed." First American's e-mail communications demonstrate that First

2  American and eAppraiseIT entered into an unlawful agreement with Washington Mutual for a

3  higher cut of the appraiser's appraisal fees, in exchange for eAppraiseIT allowing Washington

4  Mutual to designate and exclusively use the Proven Panel for appraisals.

5          66.    In furtherance of their unlawful scheme, eAppraiseIT's President further

6  suggested to Washington Mutual:

7          we should have WaMu write the introduction letters to their appraisers, set the
         stage and let us do our magic....I assured her the noise from retail will stop....She
8          brought up the fact that Wamu knows this means little money to no money for EA
         and LSI and they will fix that in the near future. But for now they need to stop the
9          noise or none of us will be around. I believe her.

10         67.    eAppraiseIT ceded its independence in order to work with WaMu to improperly

11  provide higher appraisals. In a March 2, 2007 email, eAppraiseIT's President told WaMu

12  executives:

13         Recently, we have been notified that Lending would like us to use more of their
         "Proven Appraisers" versus appraisers off our pre-selected appraiser panel. It
14         seems the amount of Reconsideration of Value (ROV) requests associated with
         our appraisers far exceeds those initiated when a Wamu proven appraiser
15         completes a file. Said differently, **Wamu proven appraisers bring the value in
         a greater majority of the time** with minimal involvement of the vendor, sales
16         and Appraisal Oversight. **I am fine with that, of course, and will happily
         assign Wamu orders to Wamu proven appraisers instead of eAppraiseIT's
17         approved panel appraiser whenever possible.**

18  (Emphasis added.)

19         68.    On March 5, 2007, Washington Mutual "confirmed the primary role of its loan

20  origination staff in picking appraisers in a follow-up email," in which it stated that:

21         Proven Appraiser List is being created. This will replace the WaMu preferred list.
         *The initial list of names will be provided by lending* with a minimum of two
22         appraisers per area/county. The list will then be reviewed and approved by the
         Appraisal Business Oversight Team and will be checked against our most recent
23         ineligible list. Final list will be provided to VMC's [vendor management
         companies]. Majority of work must be assigned to the appraisers on the Proven
24         Appraiser List on a Priority Basis.

25  (Emphasis added.)

26         69.    The improper nature of First American's and eAppraiseIT's agreement and

27  pattern of conduct with Washington Mutual to artificially inflate property values as necessary to

CLASS ACTION COMPLAINT - 25

1    "hit" necessary loan values and LTV ratios was, by the spring of 2007, openly acknowledged as

2    being inappropriate within eAppraiseIT. One internal eAppraiseIT email, admitted that the use

3    of Washington Mutual's hand-selected Proven Panel "is way over the line."

4         70.    In April 2007, eAppraiseIT executives discussed the illegality of their actions.

5    According to the NYAG Complaint, on April 4, 2007, eAppraiseIT's Executive Vice President

6    wrote an email to senior eAppraiseIT executives regarding eAppraiseIT's legal liability for

7    using Washington Mutual's Proven Panel, stating:

8         the lender's responsibility since the OCC [Office of the Comptroller of the
          Currency]/OTS only pertain to lenders. *However, we as an AMC need to retain*
9         *our independence from the lender or it will look like collusion. Imagine a simple*
          *mortgage broker saying he will give us the work if we use his "proven"*
10        *appraiser. We say no. This is very similar to that except they are very big. . . .*

11        So the push back to WAMU needs to be (assuming we want to do this some
          day), eAppraiseIT needs to choose the appraisers, not WAMU. Where it gets
12        really clear that eAppraiseIT is NOT choosing is the proven idea because they
          always go first and MUST be selected unless there is a specific reason why not.
13        *eAppraiseIT is clearly being directed who to select. The reasoning that*
          *there are fewer ROVs is bogus for many reasons including the most obvious*
14        *— the proven appraisers bring in the values.*

15        Fun, eh??

16   (Emphasis in NYAG Complaint.)

17        71.    Both First American and eAppraiseIT were fully aware that eAppraiseIT

18   was violating OCC, OTS, FDIC and USPAP rules. Two weeks later, on April 17, 2007, an

19   eAppraiseIT executive wrote an email to First American executives stating that eAppraiseIT was

20   violating laws mandating appraisers' independence by using Washington Mutual's Proven Panel.

21   The April 17, 2007 email attached a memo (sent to Washington Mutual) which admitted that the

22   use of the Proven Panel was a violation of rules demanding eAppraiseIT's independence from

23   Washington Mutual. In the email, the eAppraiseIT executive specifically wrote, "We view this as

24   a violation of the OCC, OTS, FDIC and USPAP influencing regulation."

25        72.    The memo referenced in the April 17, 2007 email to Washington Mutual stated, in

26   relevant part:

27

CLASS ACTION COMPLAINT - 26

The various regulatory boards including OTS, OCC, FDIC and others prepared a list of frequently asked questions on Independent Appraisal and Evaluation Functions on March 21, 2005. These FAQs should be reviewed in conjunction with prior guidelines published in 1994 and 2003. I have included the 2005 FAQs at the end of this document. We assume that you are very familiar with these documents.

We want to focus on appraiser independence. All three documents address and re-address this issue. In the section titled Independence of the Appraisal and Evaluation Function, the 1994 and 2003 document states, "Because the appraisal and evaluation process is an integral component of the credit underwriting process, it should be isolated from influence by the institutions's loan production process." This is reinforced in the Selecting Individuals to Perform Appraisals or Evaluations section from the 2003 document. *It states that it is important to ensure that the program is safeguarded from internal influence and interference from an institution's loan production staff. Individuals independent from the loan production area should oversee the selection of appraisers and individuals providing evaluation services.*

(Emphasis added.)

73.    Acknowledging that they were not following federal regulators' appraiser independence guidelines, eAppraiseIT's memo further stated:

Based on our conversations we have had with the WAMU oversight as well as the questions and answers initiated by our competitor LSI, *it is our interpretation that the loan production staff has a great deal to do with selecting appraisers. The PAL Proven Appraiser List has been selected by the loan production staff and the continued use of these appraisers is being monitored by the loan production staff.* For example, on the LSI question #1 "Does WAMU want to be updated transactionally on every order we can not assign to a PAL?", WAMU's answer is "Yes,- we need a short sentence in the message log so that we can monitor, – AND most important - lending can see why you didn't assign to a PAL service provider. Not using a PAL appraiser will be an issue so we need to ensure we've covered our bases as to why they're not utilized." *This appears to be directly in contradiction to the interagency guidelines unless you have a different interpretation.*

* * *

This produces the following challenge – eAppraiseIT is operating under what appears to be a mandate from WAMU in utilizing PAL selected appraisers (and this selection is coming from the loan production staff). We are then asked to rep and warrant this work. We are concerned about this arrangement from a risk perspective . . . .

(Emphasis added.)

74.    After at least one year of participating in the unlawful scheme with Washington Mutual, certain executives at eAppraiseIT had became increasingly concerned about its

CLASS ACTION COMPLAINT - 27

1  "collusion" with Washington Mutual. On April 17, 2007, eAppraiseIT's Executive Vice

2  President wrote to eAppraiseIT's President and Chief Operating Officer, stating:

3       OTS and OCC only control lenders. **However, there is the legal concern about
        collusion. For example, let's say it is discovered that a lender (loan officer at
4       a lender) is being collusive with an appraiser that is on OUR (WAMU) panel.
        That is, our reps and warrants apply. Then we are liable I would say because
5       we have gone along with it....**

6       In addition, I think it will tarnish our reputation in the appraisal community
        because we are allowing WAMU to pick appraisers based on their loan officers.
7       It makes us look complicit. So [it] may not be actionable legally but would hurt
        our reputation. So those are two bad things off the cuff. There may be more if we
8       think about it and use creative paranoia.

9  (Emphasis added.)

10      75.     On that same day, eAppraiseIT staff appraisers were advised by email that if they

11 were not on the Washington Mutual Proven Appraiser List, they would likely not receive work

12 from Washington Mutual, as follows:

13      I thought I [sic] pass on my thoughts regards the recent message that we all
        received for [sic] Peter last weekend. I will be glad to tell you what I know. I
14      have been told that the lending folks at Wamu and [sic] were unhappy with the
        AMC's and felt they were not receiving a good level of appraisal work. They
15      therefore decided to construct their own appraisal panel, now known as the wamu
        proven panel, and instructed the AMC's to utilize appraisers from this panel
16      whenever possible. The end result is that if you are not on this proven panel it is
        very unlikely you will receive wamu work.

17
        76.     Beyond selecting members for the Proven Panel, Washington Mutual also
18
   assigned specific appraisals to individual members in the Proven Panel. According to the NYAG
19
   Complaint, on April 19, 2007, eAppraiseIT's Chief Operating Officer wrote the following in an
20
   email to eAppraiseIT's President and Executive Vice President: "Evidently, we do get
21
   calls/emails from the WaMu Oversight Group to select a specific appraiser for an order. Now,
22
   normally, this would not be a concern since the group is separate from [WaMu] lending.
23
   However, Vicky [at eAppraiseIT] is also receiving a copy of an email from the LC [WaMu
24
   Loan Consultants] to Oversight requesting the appraiser selection – then the subsequent email
25
   from Oversight directing the assignment change."
26

27

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

77.     Shortly thereafter, eAppraiseIT's President expressed his concerns regarding their reputational risk in an email to senior management at First American dated April 26, 2007:

> Sales is the driving force behind the Proven Appraiser List (PAL) which is questionable from regulatory perspective. We are required to use these appraisers at 80/20% fee splits. This is dilutive to our P&L. Even with the implementation of such, we are still finding that we are being questioned surrounding what appraiser was assigned the order. **We feel our reputation in the industry is being tarnished by the implementation of the Proven List since Production selects the appraiser.**

(Emphasis added.)

78.     On May 11, 2007, eAppraiseIT's Executive Vice President conceded to eAppraiseIT's President that "*currently WAMU is controlling the appraiser panel. They are selecting the appraisers and calling them 'proven' appraisers*. These appraisers are being chosen by their sales force. [eAppraiseIT] is obligated to use these appraisers." (Emphasis added.)

79.     The e-mail correspondence and internal memoranda establish that eAppraiseIT improperly allowed Washington Mutual to control the purportedly independent appraisal process by hand-picking appraisers to perform appraisals, and by pressuring eAppraiseIT appraisers to "hit" necessary loan values and ratios to allow loans to close and be sold.

          e.    **First American and eAppraiseIT Threaten to Discontinue Warranting Washington Mutual Appraisals Because Their Illegal Collusion with Washington Mutual to Inflate Appraisals Compromised Appraiser Independence**

80.     Additional emails reveal that the Defendants attempted to back away from warranting appraisals performed by appraisers on the Washington Mutual Proven Appraiser List, despite the representations on eAppraiseIT's website that "All of First American eAppraiseIT's traditional appraisal products come standard with one of the industry's strongest warranties." According to the Website:

> Our warranty coverage includes foreclosure loss incurred due to fraud or gross negligence. First American eAppraiseIT's commitment to appraisal quality means our customers don't need to go through the lengthy and difficult process of filing a claim against our Errors and Omissions policy, in the event they suffer a loss due to appraiser error. Of course, the policy is there for that purpose, but our

CLASS ACTION COMPLAINT - 29

1    warranty presents a much simpler way to recover losses due to appraisal fraud or
     gross negligence.

2

3        81.    eAppraiseIT informed Washington Mutual on April 26, 2007 via e-mail that

4    effective May 1, 2007, it would not warrant "appraisals as performed by the Wamu

5    selected Proven Appraiser List (PAL) appraiser on originations....The new, verbal

6    requirements to utilize Wamu's panelists falls outside the spirit and letter of our agreement as it

7    relates to Warranties...."

8        82.    As alleged in the NYAG Complaint, "eAppraiseIT's Chief Appraiser has testified

9    that the threat to stop warranting was based on the risks inherent with WaMu's choice of such a

10   'limited' panel."

11       83.    According to the NYAG Complaint, these risks were discussed in an email from

12   eAppraiseIT's Executive Vice President to others in senior management using reconsideration of

13   value as an example: "The original appraiser was a WAMU proven appraiser coming in

14   $750,000 higher than the eAppraiseIT review appraiser.  This is a good example of why we

15   currently have stopped rep and warrants and our concerns about over-valued properties."

16       84.    eAppraiseIT's Chief Operating Officer wrote in response to the above email that

17   "In addition to this example, we are also seeing what appears to be a higher incidence of

18   Threshold Reviews [mandated for properties worth over $1 million] coming in with a lower

19   value than the original appraisal.  I think this supports our concern regarding the proven list."

20       85.    eAppraiseIT's President wrote to eAppraiseIT's Chief Operating Officer on April

21   30, 2007 regarding the warranting of appraisals from WaMu's Proven Appraiser Panel:

22       I have given serious thought to your suggestions on Friday regarding an
         addendum to section B of the contract striking our quality control efforts and
23       warranty coverage on appraisals performed by an appraiser off the Wamu Proven
         Appraiser List (PAL).  Would you draft something that stipulates this?  Again,
24       this new requirement violates the spirit of our agreement where we agreed to
         aggressively QC and warrant appraisals as performed by our own panel.  **Using
25       Loan Officer's favorite appraiser is obviously something we will not stand
         behind from a quality and risk perspective.**

26   (Emphasis added.)

27

CLASS ACTION COMPLAINT - 30

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1      86.    Despite the concerns raised by the Chief Operating Officer, eAppraiseIT

2    continued to compromise its independence and collude with Washington Mutual as evidenced by

3    a May 15, 2007 email from the Chief Operating Officer to eAppraiseIT's President which stated:

4    "I think this proves the point that…Oversight continues to buckle when confronted with direct

5    and unrelenting pressures from lending."

6      87.    According to the NYAG Complaint, "[a]lthough eAppraiseIT repeatedly told First

7    American that Washington Mutual's loan origination staff illegally selected and controlled its

8    Proven Appraiser List and that, in some instances, loan officers were directly selecting specific

9    appraisers, First American instructed eAppraiseIT to continue the business relationship with

10   Washington Mutual. By email dated May 17, 2007, First American's Chief Operating Officer

11   instructed eAppraiseIT's President and Executive Vice President to continue the relationship

12   with Washington Mutual and to 'design a model that predominately leverages their panel but

13   doesn't violate our independence which is probably easier said than done but there should be a

14   way to figure it out.'"

15     88.    In fact, in a letter eAppraiseIT's Executive Vice President wrote to a senior

16   executive at Washington Mutual on May 29, 2007, eAppraiseIT again acknowledged that it was

17   unlawfully colluding with Washington Mutual:

18            In the first quarter of 2007, the sales group of WAMU began to insist they choose
              the appraisers mostly due to their concerns about 'low values.' eAppraiseIT
19            encouraged WAMU to resist these pressures if possible. However, WAMU
              decided to go with what came to be called the "proven" list of appraisers
20            recommended by sales….

21            The use of the "proven panel is challenging for eAppraiseIT in two ways: A.
              Financially – The proven panel is paid a minimal [sic] of 20% more than the
22            eAppraiseIT panel. B. Risk Management – **the possibility of collusion between
              the loan officers and appraisers is increased when eAppraiseIT does not
23            control the selection.** In addition, eAppraiseIT is concerned with any possible
              lender pressure or perception of lender pressure when the only way to get on the
24            WAMU "proven" panel is through the loan officer.

25   (Emphasis added.)

26     89.    On June 7, 2007, in order to further conceal the illicit collusion, Washington

27   Mutual requested and eAppraiseIT agreed to rename to the Proven Appraisers List: "Name

CLASS ACTION COMPLAINT - 31

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1  change from 'proven appraiser' and/or use of the moniker 'PAL' list is discontinued, under

2  direction of the Washington Mutual legal department. We are utilizing a more generic term

3  acceptable w/in regulatory guidelines and industry standards."

4          f.    **First American and eAppraiseIT Allow Washington Mutual to**
               **Remove Appraisers from the Proven Appraiser Panel and to**
5              **Communicate Directly with eAppraiseIT Appraisal Business**
               **Managers in Violation of Federal Law**

6      90.    According to the NYAG Complaint, eAppraiseIT permitted Washington Mutual's

7  loan origination staff to select and remove proven appraisers and to control the Proven Panel of

8  Appraisers. For example, "Appraiser A" was an approved appraiser. From January 25, 2007

9  through May 7, 2007, Appraiser A conducted five appraisals on Washington Mutual properties

10  for eAppraiseIT. Washington Mutual requested a reconsideration of value for each appraisal.

11  When Appraiser A refused, the Appraiser was subsequently removed from the List, placed on an

12  inactive list, and informed that he was removed because he did not increase values in response to

13  the reconsideration of values.

14      91.    Appraiser A wrote an email to eAppraiseIT on May 30, 2007 requesting to be

15  "reinstated as an active preferred appraiser." In response, an eAppraiseIT Appraisal Specialist

16  wrote to eAppraiseIT's Executive Vice President, Chief Operating Officer and Chief Appraiser

17  on May 30, 2007, stating:

18          I was working with two good, solid long-time wonderful appraisers in NY and CT
19          until right after the WaMu Proven Panel was formed. They were both removed
            very soon after for no apparent reason. **We were having value issues, however,**
20          **I felt their work was very defendable and supportable and kept copious notes**
            **on our dealings.** They have continued to keep in touch with me, in order to find
21          out why they were removed from the panel.

22  (Emphasis added.)

23      92.    The following day, eAppraiserIT's Chief Appraiser replied that as the Proven

24  Appraiser List went around, Appraiser A was removed from the List. "The probability that a

25  loan officer requested him to be removed is pretty high I think because that is what they did with

26  the Master List; they sent it around to Lending to choose."

27

CLASS ACTION COMPLAINT - 32

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1    93.    Similarly, after "Appraiser B" conducted hundreds of appraisals for WaMu loans

2  on behalf of eAppraiseIT from January 2007 through April 2007 and received 102 requests for

3  reconsiderations of value, Appraiser B was removed from the List.

4    94.    Appraiser B questioned his removal in an email to eAppraiseIT on April 3, 2007.

5  According to the NYAG Complaint, a senior appraiser employed by Appraiser B stated to

6  eAppraiseIT that he was removed from the List because WaMu disapproved of him reducing

7  appraisals after conducting desk reviews. He stated, "After reviewing appraisals over the past

8  few months, many of which are fraudulent, with inflated unsupported values, it is disturbing that

9  WaMu's focus and concern is misplaced with the review process."

10    95.    "Appraiser C" wrote to eAppraiseIT regarding her concern over the lack of

11  appraiser independence which was resulting in regulatory violations:

12    This is the second Wamu Appraisal quality assurance issue I have received from
      WaMu in the past 2 months. Both as a result of an appraisal I completed that did
13    not come in to their predetermined value for a "valued" Wamu client. **I was
      pressured for 2 weeks to change both my value and the conditions of my**
14    **appraisal report...both of which were violations of USPAP, FANNIE MAE
      and the Supplemental Standards I am required to observe and am bound by**
15    **my license to complete.** Since that time, I have been singled out by WaMu and
      have been pressured on every appraisal I have completed that did not reach a pre-
16    determined value. I feel that Wamu is in process of "blacklisting" me as an
      approved Wamu appraiser by going after each appraisal I complete and looking
17    for violations."

18  (Emphasis added).

19    96.    eAppraiseIT willingly and recklessly allowed Washington Mutual loan officers to

20  discuss appraisal loan values directly with eAppraiseIT's ABMs and Appraisal Specialists using

21  both telephone and email. Further, eAppraiseIT's ABMs had the authority to change a final

22  appraisal value as a result of Washington Mutual demanding in September 2006 that ABMs "be

23  permitted to 'proactively mak[e] a decision to override and correct the third party appraiser's

24  value or reviewer's value cut.'" These procedures violated federal laws and regulations and also

25  were contrary to the procedures represented to investors in the Registration Statement and

26  Prospectuses.

27

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1    97.    Moreover, email communications between eAppraiseIT and Washington Mutual

2  reveal that, in an effort to close loans, Washington Mutual pressured eAppraiseIT's ABMs to

3  increase appraised values. One email drafted by a Washington Mutual loan officer to an

4  eAppraiseIT appraiser stated, "Basically, if we don't get at least the appraised value of

5  $3,650,000...we lose the deal." Prior to drafting the email, that loan officer stated to

6  eAppraiseIT that "if we don't have a definitive $$ appraised value then the borrower will go to

7  another lender with a higher appraised value of $4mm. Please...at least...keep this value at the

8  original appraised value of $3,650,000."

9    98.    Additional email communications confirm the collusion to inflate appraisal

10  values. For example, on May 24, 2007, eAppraiseIT's Chief Operating Officer wrote to

11  eAppraiseIT's President that "We have received in the past, and now most recently with the SAG

12  Harbor event...communications where it could be viewed that EA did experience some level of

13  influence to increase a value beyond what which we concluded in our own analysis was not

14  supported."

15    99.    eAppraiseIT's internal appraisal log entries further confirm that eAppraiseIT's

16  Review Appraisers and ABMs increased property values on appraisal reports after Washington

17  Mutual's loan origination staff advised that such entries would help close the loans. According

18  to the NYAG Complaint, from November 2006 to May 2007, "there were 8 desk reviews

19  performed by ABMs and 1 desk review performed by the Appraisal Specialist relating to

20  properties in New York, all of which were for Washington Mutual. The appraised value were

21  increased in each of the 9 desk reviews completed[.]"

22    100.    After the NYAG Complaint was filed, Washington Mutual suspended its

23  relationship with eAppraiseIT.

24    101.    The actions of First American, eAppraiseIT and Washington Mutual not only

25  violated industry regulations but also, as noted *supra*, rendered the LTV ratios disclosed in the

26  Registration Statement and Prospectuses false and misleading. For example, the appraised value

27

CLASS ACTION COMPLAINT - 34

1  of one property cited by the NYAG was inflated by nearly *47%*, from $1,550,000 to $2,270,000,

2  demonstrating that the collateral was wholly-inadequate to protect investors.

### FALSE AND MISLEADING STATEMENTS

4      102.    Defendants knew and intended that Plaintiffs and investors would and did rely on

5  the material misrepresentations and omissions in the Registration Statement and Prospectuses.

6  In fact, Defendants knew or recklessly disregarded that Washington Mutual and its affiliates used

7  the inflated appraised home values to induce Plaintiffs to invest in the Certificates to generate

8  substantial fees and commissions.

9      103.    The Registration Statement and Prospectuses issued in connection with offering

10  the WaMu Mortgage Pass-Through Certificates made the following statements regarding the

11  underwriting standards that purportedly were applied to determine the value of the collateral

12  for mortgages included in the Trusts:

> In determining the adequacy of the property as collateral, an appraisal is made of
> each property considered for financing. The appraiser, or an agent on its behalf, is
> generally required to personally inspect the property and verify that it is in
> adequate condition and that construction, if new, has been substantially
> completed. However, in some cases an automated valuation method may be used,
> under which the appraiser does not personally inspect the property but instead
> relies on public records regarding the mortgaged property and/or neighboring
> properties. In either case, the appraisal normally is based upon a market data
> analysis of recent sales of comparable properties and, when deemed applicable, a
> replacement cost analysis based on the current cost of constructing or
> purchasing a similar property. Some of the mortgage loans may be re-
> underwritten by a mortgage loan seller. Certain states where mortgage
> properties may be located are 'anti-deficiency' states, where, in general, lenders
> providing credit on one-to-four-family properties must look solely to the property
> for repayment in the event of foreclosure. See 'Legal Aspects of the Mortgage
> Loans -- Anti-Deficiency Legislation and Other Limitation on Lenders'.
> Underwriting standards in all states (including anti-deficiency states) will require
> that the underwriting officers be satisfied that the value of the property being
> financed, as indicated by the independent appraisal, currently supports and is
> anticipated to support in the future the outstanding loan balance, and provides
> sufficient value to mitigate the effects of adverse shifts in real estate values.

24  Registration Statement, at 44.

25      104.    The above statement was materially false and misleading when made because

26  Washington Mutual failed to disclose that First American and eAppraiseIT, in concert with

27  Washington Mutual, deliberately, negligently and systematically inflated appraisals for

CLASS ACTION COMPLAINT - 35

1  properties that failed to otherwise satisfy its threshold for adequate LTV ratios for mortgages

2  included in the Trusts.

3      105.  The Prospectuses issued in connection with each of the Trusts contained

4  statements describing the underwriting standards by which the mortgages in the Trusts were

5  issued, the standards by which the mortgage collateral was valued, and the LTV ratios of

6  mortgages within the Trusts. As set forth herein, these various statements were materially false

7  and misleading when made.

8      106.  Each of the Prospectuses issued in connection with the Trusts represented that the

9  mortgages in the mortgage pool held by each Trust were underwritten in accordance with

10  established industry guidelines. For example, in each of the Prospectuses, the following

11  statement was made regarding the underwriting standards for the constituent pools of mortgages:

> All of the mortgage loans owned by the Trust have been originated in accordance
> with the underwriting guidelines of the sponsor as described in this section.
> Mortgage loans may have been underwritten directly by the sponsor or by
> correspondent lenders with delegated underwriting approval.
>
> The sponsor's underwriting guidelines generally are intended to evaluate the
> prospective borrower's credit standing and repayment ability and the value and
> adequacy of the mortgaged property as collateral. Some mortgage loans are
> manually underwritten, in which case an underwriter reviews a loan application
> and supporting documentation, if required, and a credit report of the
> borrower, and based on that review determines whether to originate a loan in the
> amount and with the terms stated in the loan application.

    107.  The above statements were materially false and misleading when made because

the Prospectuses failed to disclose that the stated underwriting guidelines with respect to the

valuing of properties included in the Trusts were not met, and the value and adequacy of the

mortgaged property as collateral was not evaluated in an independent and objective manner

because First American and eAppraiseIT colluded with Washington Mutual to over-value the

properties used to collateralize the securities in violation of federal and state regulations.

    108.  With respect to the underwriting guidelines used to determine the value of the

underlying collateral for mortgages included in the Trusts, each Prospectus made the

following representation:

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1
2
3
4
5
6
7
8
9
10
11
12
13

The adequacy of the mortgaged property as collateral generally is determined by an appraisal made in accordance with pre-established appraisal guidelines. At origination, all appraisals are required to conform to the Uniform Standards of Professional Appraisal Practice adopted by the Appraisal Standards Board of the Appraisal Foundation, and are made on forms acceptable to Fannie Mae and/or Freddie Mac. Appraisers may be staff appraisers employed by the sponsor or independent appraisers selected in accordance with the pre-established appraisal guidelines. Such guidelines generally require that the appraiser, or an agent on its behalf, personally inspect the property and verify whether the property is in adequate condition and, if the property is new construction, whether it is substantially completed. However, in the case of mortgage loans underwritten through the sponsor's automated underwriting system, an automated valuation method may be used, under which the appraiser does not personally inspect the property but instead relies on public records regarding the mortgaged property and/or neighboring properties. In either case, the appraisal normally is based upon a market data analysis of recent sales of comparable properties and, when deemed applicable, a replacement cost analysis based on the current cost of constructing or purchasing a similar property. For mortgage loans underwritten under the sponsor's streamline documentation programs, the appraisal guidelines in some cases permit the appraisal obtained for an existing mortgage loan to be used. Title insurance is required for all mortgage loans, except that for mortgage loans secured by shares of cooperative apartments, title insurance is not required for the cooperative apartment building (but a lien search is provided by the title company). Specific additional title insurance coverage is required for some types of mortgage loans.

14    109.    The above statement was materially false and misleading when made because the

15    Prospectus failed to disclose that the value and adequacy of the mortgaged property as

16    collateral was not evaluated in an independent and objective manner because First American and

17    eAppraiseIT had colluded with Washington Mutual to over-value properties that were used to

18    collateralize the securities in violation of federal and state regulations.

19    110.    Each Prospectus also described the process of calculating the LTV as follows:

20    The value of a single-family property or cooperative unit generally is the lesser of (a) the appraised value determined in an appraisal obtained by the originator at origination of the loan and (b) if the mortgaged property is being purchased in conjunction with the origination of the mortgage loan, the sales price for the property.

21
22

23    The underwriting standards of the mortgage loan originator or mortgage loan seller may require an internal review of the appraisal (a *"review appraisal"*) used to determine the loan-to-value of a mortgage loan which may be performed by underwriters rather than a licensed appraiser. *Where the review appraisal results in a valuation of the mortgaged property that is less than a specified percentage of the original appraisal, the loan-to-value ratio of the related mortgage loan will be based on the review appraisal.*

24
25
26

27    (Emphasis added.)

CLASS ACTION COMPLAINT - 37

111.    These statements were materially false and misleading when made because as a result of the over-appraisal of properties, the disclosed LTV ratios for the underlying mortgages were materially higher than disclosed to investors, increasing substantially the risk of mortgage defaults, and the "review appraisal" was used to inflate the initial property appraisal values assigned by appraisers.

112.    The Prospectuses represented the average LTV ratios of the mortgages within the Trusts. As set forth below, these statements were materially false and misleading when made because the stated average LTV ratios were materially understated due to the inclusion of mortgages based on inflated property values performed by eAppraiseIT appraisers:

| **Supplemental Prospectus** | **Statement** |
|---|---|
| WaMu Mortgage Pass Through Certificate Series 2006-AR1 Trust | At origination, the weighted average loan-to-value ratio of the group 1 loans was approximately 71.1%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the group 1 loans was approximately 71.1 %. |
| WaMu Mortgage Pass Through Certificate Series 2006-AR2 Trust | At origination, the weighted average loan-to-value ratio of the group 1 loans was approximately 67.5%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the group 1 loans was approximately 67.3%. |
| WaMu Mortgage Pass Through Certificate Series 2006-AR3 Trust | At origination, the weighted average loan-to-value ratio of the mortgage loans was approximately 71.6%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the mortgage loans was approximately 71.5%. |
| WaMu Mortgage Pass Through Certificate Series 2006-AR4 Trust | At origination, the weighted average loan-to-value ratio of the group 1 loans was approximately 68.6%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the group 1 loans was approximately 67.6%. |
| WaMu Mortgage Pass Through Certificate Series 2006-AR5 Trust | At origination, the weighted average loan-to-value ratio of the mortgage loans was approximately 70.9%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the mortgage loans was approximately 70.8%. |

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

| Supplemental Prospectus | Statement |
|---|---|
| WaMu Mortgage Pass Through Certificate Series 2006-AR6 Trust | At origination, the weighted average loan-to-value ratio of the group 1 loans was approximately 68.7%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the group 1 loans was approximately 68.7%. |
| WaMu Mortgage Pass Through Certificate Series 2006-AR7 Trust | At origination, the weighted average loan-to-value ratio of the group 1 loans was approximately 71.0%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the group 1 loans was approximately 70.7%. |
| WaMu Mortgage Pass Through Certificate Series 2006-AR8 Trust | At origination, the weighted average loan-to-value ratio of the group 1 loans was approximately 68.1%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the group 1 loans was approximately 68.1%. |
| WaMu Mortgage Pass Through Certificate Series 2006-AR9 Trust | At origination, the weighted average loan-to-value ratio of the group 1 loans was approximately 70.1%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the group 1 loans was approximately 70.0%. |
| WaMu Mortgage Pass Through Certificate Series 2006-AR10 Trust | At origination, the weighted average loan-to-value ratio of the group 1 loans was approximately 67.9%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the group 1 loans was approximately 67.8%. |
| WaMu Mortgage Pass Through Certificate Series 2006-AR11 Trust | At origination, the weighted average loan-to-value ratio of the group 1 loans was approximately 70.4%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the group 1 loans was approximately 70.4%. |
| WaMu Mortgage Pass Through Certificate Series 2006-AR12 Trust | At origination, the weighted average loan-to-value ratio of the group 1 loans was approximately 68.3%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the group 1 loans was approximately 68.3%. |
| WaMu Mortgage Pass Through Certificate Series 2006-AR13 Trust | At origination, the weighted average loan-to-value ratio of the group 1 loans was approximately 70.9%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the group 1 loans was approximately 70.8%. |

CLASS ACTION COMPLAINT - 39

| **Supplemental Prospectus** | **Statement** |
|---|---|
| WaMu Mortgage Pass Through Certificate Series 2006-AR14 Trust | At origination, the weighted average loan-to-value ratio of the group 1 loans was approximately 67.1%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the group 1 loans was approximately 67.1%. |
| WaMu Mortgage Pass Through Certificate Series 2006-AR15 Trust | At origination, the weighted average loan-to-value ratio of the group 1 loans was approximately 70.5%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the group 1 loans was approximately 70.5%. |
| WaMu Mortgage Pass Through Certificate Series 2006-AR16 Trust | At origination, the weighted average loan-to-value ratio of the group 1 loans was approximately 66.5%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the group 1 loans was approximately 66.5%. |
| WaMu Mortgage Pass Through Certificate Series 2006-AR17 Trust | At origination, the weighted average loan-to-value ratio of the group 1 loans was approximately 69.6%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the group 1 loans was approximately 69.6%. |
| WaMu Mortgage Pass Through Certificate Series 2006-AR18 Trust | At origination, the weighted average loan-to-value ratio of the group 1 loans was approximately 66.7%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the group 1 loans was approximately 66.7%. |
| WaMu Mortgage Pass Through Certificate Series 2006-AR19 Trust | At origination, the weighted average loan-to-value ratio of the group 1 loans was approximately 69.5%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the group 1 loans was approximately 69.4%. |

113. The statements in the preceding paragraph were materially false and misleading because the average LTV ratios were materially understated as a result of artificially inflated appraisals performed by eAppraiseIT.

114. Each Prospectus issued in connection with the Series 2007-HY Registration Statement included similar material misrepresentations about the LTV ratios of the mortgages underlying the Trusts as set forth in the following chart:

CLASS ACTION COMPLAINT - 40

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

| Supplemental Prospectus | Statement |
|---|---|
| WaMu Mortgage Pass-Through Certificates Series 2007-HY1 Trust | At origination, the weighted average loan-to-value ratio of the group 1 loans was approximately 67.9%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the group 1 loans was approximately 67.9%. |
| WaMu Mortgage Pass-Through Certificates Series 2007-HY2 Trust | At origination, the weighted average loan-to-value ratio of the group 1 loans was approximately 73.2%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the group 1 loans was approximately 72.8%. |
| WaMu Mortgage Pass-Through Certificates Series 2007-HY3 Trust | At origination, the weighted average loan-to-value ratio of the group 1 loans was approximately 67.9%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the group 1 loans as approximately 67.9%. |
| WaMu Mortgage Pass-Through Certificates Series 2007-HY4 Trust | At origination, the weighted average loan-to-value ratio of the group 1 loans was approximately 68.6%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the group 1 loans was approximately 68.5%. |
| WaMu Mortgage Pass-Through Certificates Series 2007-HY5 Trust | At origination, the weighted average loan-to-value ratio of the group 1 loans was approximately 67.6%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the group 1 loans was approximately 67.6%. |
| WaMu Mortgage Pass-Through Certificates Series 2007-HY6 Trust | At origination, the weighted average loan-to-value ratio of the group 1 loans was approximately 70.1%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the group 1 loans was approximately 70.1%. |
| WaMu Mortgage Pass-Through Certificates Series 2007-HY7 Trust | At origination, the weighted average loan-to-value ratio of the group 1 loans was approximately 64.1%. As of the Cut-Off Date, the weighted average loan-to-value ratio of the group 1 loans was approximately 64.0%. |

115.    The statements in the preceding paragraph were materially false and

misleading when made because the average LTV ratios were materially understated as a result

of the artificially inflated appraisals performed by eAppraiseIT.

## THE MISREPRESENTATIONS HARMED PLAINTIFFS AND THE CLASS

116.    The risks that Defendants and Washington Mutual and its affiliates concealed

from investors in the Certificates were subsequently, revealed through increasing default rates on

the mortgage pools underpinning the related MBS. The value of the Certificates declined

substantially as mounting losses incurred on the MBS. Unprecedented mortgage defaults and

increased losses have far exceeded the expected rates of default on the mortgage pools, and as a

result, have directly and adversely impacted the payment stream available to investors in the

CLASS ACTION COMPLAINT - 41

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1    Certificates. Rating Agencies have significantly downgraded the Certificates in response to

2    revelations of the unreliable appraisals, widespread delinquencies and defaults incurred on mortgage

3    loans pooled by the Trusts. These actions have further materially reduced the market value of the

4    Certificates, and in some cases have impaired institutional investors' ability to hold or sell

5    Certificates that have been downgraded below investment-grade ratings.

6        117.    For the WaMu Mortgage Pass-Through Certificates, Series 2006-AR1 Trust, as of

7    July 3, 2008, Moody's placed one tranche on review for a possible downgrade, and downgraded

8    four tranches by multiple rating levels. On May 1, 2008, Standard & Poor's ("S&P")

9    downgraded two tranches by multiple levels.

10        118.    For the WaMu Mortgage Pass-Through Certificates, Series 2006-AR3 Trust, as of

11    July 3, 2008, Moody's placed one tranche on review for a possible downgrade, and downgraded

12    six tranches by multiple ratings levels. On October 6, 2008, S&P downgraded eleven separate

13    tranches of the Series 2006-AR3 Trust by multiple rating levels, dropping some of these

14    Certificates below investment grade to speculative or junk ratings.

15        119.    For the WaMu Mortgage Pass-Through Certificates, Series 2006-AR4 Trust, as of

16    July 3, 2008, Moody's placed three tranches on review for a possible downgrade, and

17    downgraded six tranches by multiple rating levels. On October 6, 2008, S&P downgraded four

18    tranches of the Series 2006-AR4 Trust by multiple rating levels, dropping some of these

19    Certificates below investment grade to speculative or junk ratings.

20        120.    For the WaMu Mortgage Pass-Through Certificates, Series 2006-AR5 Trust, as of

21    July 3, 2008, Moody's downgraded eleven tranches by multiple rating levels. On October 6,

22    2008, S&P downgraded eleven tranches of the Series 2006-AR5 Trust by multiple rating levels,

23    dropping some of these Certificates below investment grade to speculative or junk ratings.

24        121.    For the WaMu Mortgage Pass-Through Certificates, Series 2006-AR6 Trust, as of

25    May 1, 2008, S&P downgraded two tranches by multiple rating levels. On October 28, 2008,

26    S&P further downgraded five tranches of the Series 2006-AR6 Trust by multiple rating levels,

27    dropping some of these Certificates below investment grade to speculative or junk ratings.

CLASS ACTION COMPLAINT - 42

1    122.    For the WaMu Mortgage Pass-Through Certificates, Series 2006-AR7 Trust, as of

2   July 3, 2008, Moody's placed two tranches on review for possible downgrades, and downgraded

3   twelve tranches by multiple rating levels. On October 6, 2008, S&P downgraded three tranches

4   of the Series 2006-AR7 Trust by multiple rating levels, dropping some of these Certificates

5   below investment grade to speculative or junk ratings.

6    123.    For the WaMu Mortgage Pass-Through Certificates, Series 2006-AR8 Trust, as of

7   May 1, 2008, S&P downgraded four tranches by multiple rating levels. On October 28, 2008,

8   S&P downgraded nine tranches of the Series 2006-AR8 Trust by multiple rating levels. The

9   majority of these downgraded Certificates had already been downgraded by S&P again on

10   September 22, 2008, and these further downgrades in October 2008 dropped some of the Series

11   2006-AR8 Trust Certificates below investment grade to speculative or junk ratings.

12    124.    For the WaMu Mortgage Pass-Through Certificates, Series 2006-AR9 Trust, as of

13   July 3, 2008, Moody's placed two tranches on review for possible downgrades, and downgraded

14   eleven tranches by multiple rating levels. After placing a number of tranches on watch for

15   downgrades on September 25, 2008, S&P, within weeks on October 6, 2008, downgraded ten

16   tranches multiple levels, dropping some of these Series 2006-AR9 Trust Certificates below

17   investment grade to speculative or junk ratings.

18    125.    For the WaMu Mortgage Pass-Through Certificates, Series 2006-AR10 Trust, on

19   May 1, 2008, S&P downgraded eight tranches by multiple rating levels. On October 28, 2008,

20   S&P downgraded eleven tranches of the Series 2006-AR10 Trust by multiple rating levels,

21   dropping some of these Certificates below investment grade to speculative or junk ratings.

22    126.    For the WaMu Mortgage Pass-Through Certificates, Series 2006-AR11 Trust, on

23   July 3, 2008, Moody's placed three tranches on review for possible downgrades, and twenty-two

24   tranches were downgraded multiple rating levels. On May 1, 2008, S&P downgraded twenty

25   tranches by multiple rating levels.

26    127.    For the WaMu Mortgage Pass-Through Certificates, Series 2006-AR12 Trust, as

27   of May 1, 2008, S&P downgraded five tranches by multiple rating levels. On December 4, 2008,

CLASS ACTION COMPLAINT - 43

1   S&P downgraded twenty-two tranches of the 2006-AR12 Trust by multiple rating levels. The

2   majority of these downgraded Certificates had already been downgraded by S&P again on

3   October 28, 2008, and these further downgrades in December 2008 dropped some of the Series

4   2006-AR12 Trust Certificates below investment grade to speculative or junk ratings.

5      128.   For the WaMu Mortgage Pass-Through Certificates, Series 2006-AR13 Trust, as

6   of July 3, 2008, Moody's placed two tranches on review for possible downgrades, and eleven

7   were downgraded multiple rating levels. On October 28, 2008, S&P downgraded thirteen

8   tranches of the Series 2006-AR13 Trust by multiple rating levels, dropping some of these

9   Certificates below investment grade to speculative or junk ratings. As of October 13, 2008, S&P

10  projected that the Series 2006-AR13 Trust Certificates would suffer losses in excess of $90.60

11  million.

12     129.   For the WaMu Mortgage Pass-Through Certificates, Series 2006-AR14 Trust, as

13  of May 1, 2008, S&P downgraded four tranches by multiple rating levels. On October 28, 2008,

14  S&P downgraded twelve tranches of the Series 2006-AR14 Trust by multiple rating levels,

15  dropping some of these Certificates below investment grade to speculative or junk ratings.

16     130.   For the WaMu Mortgage Pass-Through Certificates, Series 2006-AR15 Trust, as

17  of July 3, 2008, Moody's placed two tranches on review for possible downgrades, and thirteen

18  tranches were downgraded multiple rating levels. On October 27, 2008, S&P downgraded

19  twelve tranches of the Series 2006-AR15 Trust by multiple rating levels, dropping some of these

20  Certificates below investment grade to speculative or junk ratings. As of October 13, 2008, S&P

21  projected that the Series 2006-AR15 Trust Certificates would suffer losses in excess of $50.05

22  million, and on October 27, 2008, S&P downgraded twelve tranches of the Series 2006-AR15

23  Trust by multiple rating levels, dropping some of these Certificates below investment grade to

24  speculative or junk ratings.

25     131.   For the WaMu Mortgage Pass-Through Certificates, Series 2006-AR16 Trust, as

26  of May 1, 2008, S&P downgraded eight tranches by multiple rating levels. On October 28,

27

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1  2008, S&P downgraded eleven tranches of the Series 2006-AR16 Trust by multiple rating levels,

2  dropping some of these Certificates below investment grade to speculative or junk ratings.

3      132.    For the WaMu Mortgage Pass-Through Certificates, Series 2006-AR17 Trust, as

4  of July 3, 2008, Moody's placed two tranches on review for possible downgrades, and twelve

5  tranches were downgraded multiple ratings levels, and remain under review for further

6  downgrades.  On October 20, 2008, S&P downgraded twelve tranches of the Series 2006-AR17

7  Trust by multiple rating levels, dropping some of these Certificates below investment grade to

8  speculative or junk ratings.  As of October 13, 2008, S&P projected that the Series 2006-AR17

9  Trust Certificates would suffer losses in excess of $73.84 million.

10      133.    For the WaMu Mortgage Pass-Through Certificates, Series 2006-AR18 Trust, as

11  of May 1, 2008, S&P downgraded four tranches by multiple rating levels.  On December 4,

12  2008, S&P downgraded fifteen tranches of the 2006-AR18 Trust by multiple rating levels.  The

13  majority of these downgraded Certificates had already been downgraded by S&P again on

14  October 28, 2008, and these further downgrades in December 2008 dropped some of the Series

15  2006-AR12 Trust Certificates below investment grade to speculative or junk ratings.

16      134.    For the WaMu Mortgage Pass-Through Certificates, Series 2006-AR19 Trust, as

17  of July 3, 2008, Moody's placed three tranches on review for possible downgrades, and thirteen

18  tranches were downgraded multiple rating levels.  On October 30, 2008, S&P severely

19  downgraded nine tranches of the Series 2006-AR19 Trust by multiple rating levels, dropping

20  some of these Certificates below investment grade to speculative or junk ratings.  As of October

21  13, 2008, S&P projected that the Series 2006-AR19 Trust Certificates would suffer losses in

22  excess of $94.58 million, and on October 30, 2008, S&P severely downgraded nine tranches of

23  the Series 2006-AR19 Trust by multiple rating levels, dropping some of these Certificates below

24  investment grade to speculative or junk ratings.

25      135.    For the WaMu Mortgage Pass-Through Certificates, Series 2007-HY1 Trust, as of

26  March 17, 2008, S&P had placed four tranches on a negative ratings watch.  On May 22, 2008,

27  S&P downgraded 10 tranches by multiple rating levels, and on June 9, 2008, S&P downgraded

CLASS ACTION COMPLAINT - 45

1    six tranches by multiple rating levels. Additionally, on August 12, 2008, S&P downgraded
2    sixteen tranches by multiple rating levels.

3        136.    For the WaMu Mortgage Pass-Through Certificates, Series 2007-HY2, as of
4    March 17, 2008, S&P had placed four tranches on a negative ratings watch. On May 22, 2008,
5    S&P downgraded nine tranches by multiple rating levels, and on August 12, 2008, S&P
6    downgraded seven tranches by multiple rating levels.

7        137.    For the WaMu Mortgage Pass-Through Certificates, Series 2007-HY3, as of
8    March 17, 2008, S&P had placed five tranches on a negative ratings watch. On May 22, 2008,
9    S&P downgraded thirteen tranches by multiple rating levels, and on August 12, 2008, S&P
10    downgraded fourteen tranches by multiple rating levels.

11        138.    For the WaMu Mortgage Pass-Through Certificates, Series 2007-HY4, as of
12    March 17, 2008, S&P had placed six tranches on a negative ratings watch. On May 22, 2008,
13    S&P downgraded six tranches by multiple rating levels, and on December 5, 2008, S&P
14    downgraded eighteen tranches by multiple rating levels.

15        139.    For the WaMu Mortgage Pass-Through Certificates, Series 2007-HY5 Trust, as
16    of November 16, 2007, S&P had downgraded three tranches by multiple rating levels. On March
17    28, 2008, S&P downgraded eight tranches by multiple rating levels. On May 28, 2008, S&P
18    downgraded seven tranches by multiple ratings levels, and on October 27, 2008, S&P
19    downgraded twelve tranches by multiple ratings levels. As of October 13, 2008, S&P projected
20    that the Series 2007-HY5 Trust Certificates would suffer losses in excess of $69.33 million.

21        140.    For the WaMu Mortgage Pass-Through Certificates, Series 2007-HY6 Trust, as
22    of November 16, 2007, S&P had downgraded nine tranches by multiple rating levels. On March
23    28, 2008, S&P downgraded four tranches by multiple rating levels and projected that the Series
24    2007-HY6 Trust Certificates would suffer losses in excess of $2.2 billion. On May 28, 2008,
25    S&P downgraded eight tranches by multiple rating levels. On October 27, 2008, S&P
26    downgraded 21 tranches by multiple rating levels. As of October 13, 2008, S&P projected that
27    the Series 2007-HY6 Trust Certificates would suffer losses in excess of $119.58 million.

CLASS ACTION COMPLAINT - 46

1    141.    For the WaMu Mortgage Pass-Through Certificates, Series 2007-HY7, as of

2    November 16, 2007, S&P had downgraded nine tranches by multiple rating levels. On March

3    28, 2008, S&P downgraded five tranches by multiple rating levels. On May 28, 2008, S&P

4    downgraded twelve tranches by multiple rating levels. On October 30, 2008, S&P downgraded

5    fifteen tranches by multiple rating levels. As of October 13, 2008, S&P projected that the Series

6    2007-HY7 Trust Certificates would suffer losses in excess of $158.33 million.

7    142.    As a direct and proximate cause of the false and misleading statements issued by

8    the Defendants and Relevant Non-Parties in offering the Trusts' securities for sale, which

9    concealed material facts concerning the inflated value of the properties that collateralized the

10    mortgages in the Trusts, Plaintiffs have suffered damages.

### PLAINTIFFS' CLASS ACTION ALLEGATIONS

12    143.    Plaintiffs bring this action on their own behalf and as a class action pursuant to CR

13    23 on behalf of all persons and entities who, between April 1, 2006 and November 1, 2007 (the

14    "Class Period"), purchased or otherwise acquired the Certificates, which were issued

15    pursuant to the Registration Statement and Prospectuses and who were damaged thereby (the

16    "Class").

17    144.    Excluded from the Class are the Defendants, their officers and directors at all

18    relevant times, members of their immediate families and their legal representatives, heirs,

19    successors or assigns and any entity in which Defendants have or had a controlling interest. Also

20    excluded are former officers and directors of Washington Mutual and any of its affiliates.

21    145.    The members of the Class are so numerous that joinder of all members is

22    impracticable. While the exact number of Class members is unknown to Plaintiffs at this time

23    and can only be ascertained through appropriate discovery, Plaintiffs believe that there are

24    thousands of members in the proposed Class.

25    146.    Plaintiffs will fairly and adequately protect the interests of the Class members

26    and have retained counsel competent and experienced in class action litigation. Plaintiffs have

CLASS ACTION COMPLAINT - 47

1  no interests that are contrary or in conflict with those of the Class members that Plaintiffs seek

2  to represent.

3    147.    Plaintiffs' claims are typical of the claims of the Class members. Plaintiffs and all

4  members of the Class purchased the Certificates pursuant to a Registration Statement or

5  Prospectuses and have sustained damages as a result of the wrongful conduct complained of

6  herein.

7    148.    A class action is superior to other available methods for the fair and efficient

8  adjudication of this controversy. Because the damages suffered by the individual Class members

9  may be relatively small, the expense and burden of individual litigation make it impossible for

10  Class members individually to redress the wrongful conduct alleged herein.

11    149.    Common questions of law and fact exist as to all members of the Class and

12  predominate over any questions affecting individual members of the Class. Among the

13  questions of law and fact common to the Class are:

14    (i)    Whether Washington State's securities laws and common
       law were violated by the Defendants' acts and omissions as
15       alleged herein;

16    (ii)    Whether the value of the Certificates during the Class
       Period was misrepresented due to the materially false and
17       misleading statements and omissions arising from
       eAppraiseIT's artificially-inflated appraisals;

18

19    (iii)    Whether First American, eAppraiseIT and Washington
       Mutual entered into an agreement to procure appraisal
20       services that were not performed by independent, unbiased
       appraisers as required by law;

21    (iv)    Whether First American and eAppraiseIT violated
       appraiser independence requirements by allowing
22       Washington Mutual's loan origination staff to hand select
       appraisers who had agreed to overstate appraisal values as
23       necessary to close and sell mortgage loans;

24    (v)    Whether the agreements between First American,
       eAppraiseIT and Washington Mutual constitutes a civil
25       conspiracy; and

26    (vi)    Whether the Class members have sustained damages and,
       if so, the appropriate measure thereof.

27

CLASS ACTION COMPLAINT - 48

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1    150.    Plaintiffs know of no difficulty that will be encountered in the management of

2  this litigation that would preclude its maintenance as a class action.

3    151.    The names and addresses of the record owners of the Certificates purchased

4  during the Class Period are available from WMAAC and/or its transfer agent(s). Notice can be

5  provided to persons who purchased or otherwise acquired the Certificates by a combination of

6  published notice and first class mail, using techniques and forms of notice similar to those

7  customarily used in other class actions arising under in state and federal securities class actions.

8                                    **CAUSES OF ACTION**

9                                          **COUNT ONE**
                          **Violation of Washington State Securities Act ("WSSA")**
10                             **RCW 21.20.010 and 21.20.430(1) and (3)**
                                   **(Asserted Against All Defendants)**
11

12    152.    Plaintiffs repeat and reallege each and every allegation above as if fully set forth

      herein.
13

14    153.    This claim is brought pursuant to RCW 21.20.010 and RCW 21.20.430(1) and

15  (3), on behalf of the Plaintiffs and all Class members who purchased the Certificates which

    were issued pursuant to the Registration Statement filed with the SEC on December 30, 2005, as
16
    amended on January 3, 2006, and the corresponding Prospectuses.
17
      154.    The Certificates sold to Plaintiffs and all Class members, although not traded on a
18
    national exchange, are "securities" under the securities laws of the State of Washington. Each
19
    offer to sell the Certificates was made, directly and indirectly, by Washington Mutual and its
20
    affiliates and First American and eAppraiseIT through use of the Registration Statements and
21
    corresponding Prospectuses.
22
      155.    During the Class Period, with the cooperation, knowledge, assistance and
23
    complicity of Washington Mutual and its affiliates, Defendants eAppraiseIT and First American
24
    were artificially inflating appraised values of mortgages that were pooled and sold to the Trusts
25
    and ultimately to Plaintiffs and other Class members. In connection with the Certificates,
26
    Defendants made and/or substantially contributed to untrue statements of material fact and
27

CLASS ACTION COMPLAINT - 49

1  material omissions regarding, *inter alia*, the risks of investing in the Certificates; the stability of

2  the collateral underlying the MBS and payment streams to Certificate holders; the underwriting

3  and appraisal standards used to originate and sell the mortgage loans underpinning the MBS; and

4  the LTV ratios of the mortgage loans pooled and sold to Plaintiffs and other investors in the

5  Certificates.

6       156.  The systematic inflation of appraisal values of the properties that secured the

7  mortgages underlying the Certificates constitutes a scheme or artifice, employed by Defendants

8  and Washington Mutual, to defraud Plaintiffs, in conjunction with the offer, sale or purchase of a

9  security, in an effort to enrich Defendants and Washington Mutual.

10      157.  Defendants and Washington Mutual made or caused to be made the

11 misrepresentations and omissions set forth above, disregarding the fact that said

12 misrepresentations were untrue and that they were omitting to state material facts that would

13 have made those facts not misleading.  Further, in making these misrepresentations and

14 omissions, Defendants knew or recklessly disregarded the fact that Plaintiffs and the members of

15 the Class would rely on the statements to their detriment.  Defendants breached their duties of

16 disclosure to Plaintiffs and members of the Class by failing to disclose material facts as well as

17 other facts relating to the true state of events as described herein.

18      158.  eAppraiseIT and First American knew or recklessly disregarded the fact that the

19 aforesaid acts, practices and misleading statements and omissions were being made by

20 Washington Mutual and its affiliates.  Defendants acted in concert with Washington Mutual to

21 commit the fraud and benefited financially from the fraud.  First American and eAppraiseIT,

22 acting in concert with Washington Mutual, also materially aided in the transactions pertaining to

23 the promotion, marketing and sales of the Certificates to Plaintiffs.  Therefore, Defendants are

24 jointly and severally liable under the WSSA for any act or omission committed by Washington

25 Mutual and its affiliates.

26      159.  The foregoing conduct also constitutes the employment by Defendants of a device

27 and scheme to defraud, as well as acts, practices, and a course of dealing, which operated as a

CLASS ACTION COMPLAINT - 50

1    fraud. Defendants engaged in a plan, scheme and unlawful conspiracy and course of conduct,

2    pursuant to which they knowingly and recklessly engaged in acts, transactions, practices and a

3    course of business that operated as a fraud upon Plaintiffs and other members of the Class.

4    Defendants made and/or were a substantial contributive factor to various untrue statements of

5    material facts and omitted to state material facts necessary to make the statements made not

6    misleading to Plaintiffs and Class members. The purpose and effect of said collusion, plan and

7    scheme was to induce Plaintiffs and Class members to invest in the Certificates.

8        160.    At the time of these misrepresentations, omissions and non-disclosures,

9    Plaintiffs and members of the Class were not aware of the non-disclosures or that the

10   statements made by Defendants and Washington Mutual were either untrue or contained

11   misleading omissions. Plaintiffs and Class members reasonably relied on the truth and

12   completeness of the material representations made to them.

13       161.    Defendants First American and eAppraiseIT knew, or should have known,

14   that the LTV ratios and other false and misleading information they provided to

15   Washington Mutual would be shared with and relied upon by the investing public. But for

16   Defendants' substantial contribution to the preparation and dissemination of the false and

17   misleading Registration Statement and Prospectuses for their own financial benefit, the sale of

18   the Certificates could not and would not have been accomplished.

19       162.    As a result of the foregoing, Defendants qualify as a seller of the Certificates to

20   Plaintiffs and the members of the Class within the meaning of RCW 21.204.430(1). The acts of all

21   Defendants were a substantial contributive factor in the sales transactions. Consequently, First

22   American and eAppraiseIT are jointly and severally liable as a seller with and to the same extent as

23   Washington Mutual and its related entities.

24       163.    First American is a controlling entity or person of eAppraiseIT and is liable to

25   Plaintiffs and the members of the Class who purchased the Certificates which were issued

26   pursuant or traceable to the materially false and misleading statements and omissions contained in

27   the Registration Statement, Prospectuses and Supplemental Prospectuses. As a control person,

CLASS ACTION COMPLAINT - 51

1    First American had the power and influence, and exercised the same, to cause eAppraiseIT to

2    engage in the acts described herein.

3        164.    First American's control, ownership and positions with respect to eAppraiseIT

4    made it privy to and provided it with actual knowledge of the material facts concealed from

5    Plaintiffs and members of the Class.

6        165.    As a result of the foregoing, Defendants are also secondarily liable under RCW

7    21.204.430(3) by directly or indirectly controlling a liable seller and by materially aiding the

8    fraudulent scheme.  Consequently, Defendants eAppraiseIT and First American are jointly and

9    severally liable with and to the same extent as Washington Mutual and its affiliates for fraud and

10   misrepresentation in the sales of the Certificates.

11       166.    As a result of the forgoing, Plaintiffs and Class members have suffered substantial

12   damages and hereby tender their Certificates in exchange for full repayment of their investment

13   plus interest and attorney fees and expenses.

**COUNT TWO**
**Common Law Fraud**
**(Asserted Against All Defendants)**

14
15

16       167.    Plaintiffs repeat and reallege each and every allegation above as if set forth fully

17   herein.

18       168.    As alleged herein, Defendants made and/or were a substantial contributive factor

19   to material misrepresentations and failed to disclose material facts to Plaintiffs and other Class

20   members regarding the nature of the appraisal standards employed in connection with mortgage

21   loans that were securitized and pooled in the Trusts.  Defendants knowingly and/or recklessly

22   engaged and participated in a continuous course and scheme of deceitful conduct to inflate the

23   value of appraisals to close more home loans so that Washington Mutual could increase the

24   volume and value of the loans it was selling to Plaintiffs and the Class as securitized MBS.

25   Defendants engaged in acts, practices and a course of conduct that included misrepresenting the

26   true nature of appraisals performed on properties serving as collateral for the MBS sold to

27   Plaintiffs; and they made, or participated in making, untrue and misleading statements of

CLASS ACTION COMPLAINT - 52

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1   material fact and omitted to state material facts necessary to make their statements not

2   misleading. The purpose and effect of these deceitful schemes was to induce Plaintiffs to rely

3   upon the understated LTV ratios and other false information regarding the loan underwriting and

4   appraisal procedures employed by Defendants and Washington Mutual and its affiliates.

5       169.   Defendants and Washington Mutual in concert deliberately and recklessly

6   artificially inflated the value of properties to allow Washington Mutual to report favorable LTV

7   ratios for the mortgage loans underpinning the Certificates.

8       170.   Defendants had actual knowledge of the misrepresentations and omissions of

9   material facts, or acted with reckless disregard for the truth of those misrepresentations made in

10   connection with the offering and selling of the Certificates the public. Defendants knowingly

11   and recklessly misrepresented the risks and true nature of the collateral (i.e. home values)

12   supporting the Certificates, which was included in the Registration Statement and Prospectus for

13   each series of the Certificates and material to Plaintiffs' and other investors' purchase of the

14   Certificates.

15       171.   Defendants knew and intended that Plaintiffs and investors would and did rely on

16   the material misrepresentations and omissions in the Registration Statement and Prospectuses.

17   In fact, Defendants knew or recklessly disregarded that Washington Mutual and its affiliates used

18   the inflated appraised home values to induce Plaintiffs to invest in the Certificates to generate

19   substantial fees and commissions.

20       172.   Plaintiffs reasonably relied, to their detriment, on Defendants' misrepresentations

21   in deciding to purchase certain WaMu Mortgage Pass-Through Trust Certificates. Plaintiffs read

22   the Prospectuses and relied on the reported strong underwriting standards used to assure

23   Plaintiffs and other investors that mortgages were issued only after the real-estate that

24   collateralized the loans had been subjected to objective and independent real estate appraisals

25   that met the standards of USPAP. Plaintiffs and other Class members relied on these statements

26   as being materially complete and not omitting material information.

27

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

173.    At the time Plaintiffs and other Class members purchased the Certificates, they did not know of the false and/or misleading statements and omissions.  Had Plaintiffs and other Class members known of the true facts, they would not have purchased the Certificates or would have done so at substantially lower prices.

174.    As a direct and proximate cause of Defendants' fraud and deceit, Plaintiffs and other Class members suffered damages in connection with their purchase of the Certificates.

**COUNT THREE**
**For Civil Conspiracy**
**(Asserted Against All Defendants)**

175.    Plaintiffs repeat and reallege each and every allegation above as if set forth fully herein.

176.    First American, eAppraiseIT and Washington Mutual, and possibly other unnamed defendants, entered into an agreement and conspired to, among other things, unlawfully deprive Plaintiffs and members of the Class of their money by making untrue statements of material fact and by omitting to state certain material facts necessary to make the statements that were made not misleading.

177.    Defendants had knowledge of and agreed to the misconduct alleged herein. Defendants and Washington Mutual and its affiliates conspired with each other for the common and shared purposes of producing appraisal reports that inflated the value of properties in order to sell otherwise unqualified mortgage loans to investors.

178.    Washington Mutual, as originator of the MBS sold to Plaintiffs and other Class members, conspired with First American and eAppraiseIT to systematically inflate the appraised values of the properties that secured the mortgages underlying the Trusts.  First American and eAppraiseIT unlawfully agreed to violate federal regulations and appraiser independence requirements by allowing Washington Mutual's loan origination staff to hand select appraisers who had agreed to provide artificially-inflated home values to support the MBS packaged and sold by Washington Mutual to Plaintiffs and other Class members.

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1    179.    First American and eAppraiseIT were aware of Washington Mutual's conduct of

2  selling mortgage loans with undisclosed risks to third parties, and knowingly, willfully and

3  deliberately participated directly and indirectly by deceiving Plaintiffs and other Class members.

4    180.    Consequently, Defendants are jointly and severally liable to Plaintiffs and members

5  of the Class.

6                                    **COUNT FOUR**
                            **For Negligent Misrepresentation**
7                            **(Asserted Against All Defendants)**

8    181.    Plaintiffs repeat and reallege each and every allegation above as if set forth fully

9  herein, except allegations that Defendants made the untrue statements of material facts and

10  omissions intentionally or recklessly.  For purposes of this claim, Plaintiffs assert only

11  negligence claims and expressly disclaim any claim of fraud or intentional misconduct.

12    182.    This Count is asserted against all Defendants for negligent misrepresentation

13  under common law principles.

14    183.    Throughout the Class Period, Defendants made materially false and misleading

15  statements, as alleged above, concerning the appraised values of the properties that secured the

16  mortgages underlying the Trusts.

17    184.    Defendants knew, or should have known, that the statements made during the

18  Class Period were materially false and misleading.

19    185.    Defendants knew, or should have known, that the statements at issue here were

20  intended to be transmitted by Washington Mutual and its affiliates to the investing public.

21    186.    Defendants owed Plaintiffs a duty of reasonable care in connection with providing

22  accurate information concerning its appraisal standards and appraised home values.  Defendants

23  breached this duty by making untrue statements of material fact or omitting to state material facts

24  necessary to make the statements made, in light of the circumstances under which they were

25  made, not misleading.

26    187.    Plaintiffs, as investors, were entitled to rely upon, and were justified in relying

27  upon, the representations made by Defendants regarding their appraisal practices, appraisal

CLASS ACTION COMPLAINT - 55

1    values for properties underlying the mortgage loans that comprise the Trusts, and the LTV ratios

2    reported in the Registration Statement and Prospectuses. Plaintiffs justifiably relied to their

3    detriment upon Defendants' representations when deciding to purchase the Certificates.

4         188.    Plaintiffs had no knowledge of the false and misleading nature of the Defendants'

5    representations when purchasing the Certificates, and believed them to be true. Had Plaintiffs

6    been aware of the true facts, they would have either not purchased the Certificates, or would not

7    have purchased them at the inflated prices paid.

8         189.    As a direct and proximate cause of Defendants' acts and conduct and

9    dissemination of materially false and misleading statements and failure to disclose material facts,

10   the value of the Certificates was artificially inflated and Plaintiffs sustained damages in

11   connection with their purchases of Certificates when the value declined.

**COUNT FIVE**
**For Violation of the Consumer Protection Act**
**RCW 19.86.010 _et seq._**
**(Asserted Against All Defendants)**

15        190.    Plaintiffs repeat and reallege each and every allegation above as if set forth fully

16   herein.

17        191.    The Washington Consumer Protection Act applies to protect all consumers in

18   Washington and other states because the false and/or deceptive acts or practices at issue in this

19   case were carried out in the State of Washington.

20        192.    Defendants violated the Washington Consumer Protection Act by engaging in the

21   following false and deceptive trade practices:

22              a.       Falsely advertising the quality of the mortgage pool loans

23                       underlying the Trusts;

24              b.       Deceptively advertising and inducing Plaintiffs to acquire

25                       Certificates that were not properly valued;

26

27

CLASS ACTION COMPLAINT - 56

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1          c.    Failing to properly notify or advise Plaintiffs that the

2                appraisals of the properties in the mortgage pool loans

3                underlying the Trust had been systematically inflated;

4          d.    Failing to reimburse Plaintiffs for the inflated value of the

5                Certificates; and

6          e.    Retaining money unlawfully collected from Plaintiffs and

7                thereby defrauding Plaintiffs.

8      193.   It was Defendants' intent that Plaintiffs would and did rely on Defendants'

9  advertising and inducements.

10     194.   It was Defendants' intent that Plaintiffs would be and were deceived by

11 Defendants' characterization of the quality of the mortgage pools underlying the Trusts.

12     195.   Plaintiffs in fact relied upon Defendants' advertisements and inducements and

13 purchased Certificates.

14     196.   As a direct and proximate result of Defendants' false and deceptive advertising

15 and inducements, Plaintiffs were damaged.

16     197.   The false and deceptive advertising and inducements occurred in the course of

17 business and commerce since Defendants are in the business of providing appraisals in

18 connection with mortgages and in support of the Trusts and Certificates sold to Plaintiffs and

19 members of the Class. Defendants' conduct is part of a pattern or generalized course of conduct

20 repeated on thousands of occasions.

21     198.   The above-described false and deceptive trade practices affect the public interest

22 and have the potential for continuation and repetition, adversely affecting the public interest

23 unless redressed.

24        WHEREFORE, Plaintiffs demand judgment, as follows:

25             (a)    A declaration that this action shall be maintained as a Class
                      Action;
26
               (b)    Directing Defendants to pay to Plaintiffs and to all
27                    members of the Class damages in an amount to be proven

CLASS ACTION COMPLAINT - 57

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1            at trial, with interest thereon;

2       (c)      Awarding compensatory and rescissory damages in favor of Plaintiffs and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

3

4

5       (d)      Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

6

7       (e)      Such other and further relief as the Court may deem just and proper.

8    DATED this 24th day of December, 2008.

9

10                   KIPLING LAW GROUP PLLC

11

12                   By: _____

                       Robert D. Stewart, WSBA #8998

13                        Timothy M. Moran, WSBA #24925

14                   Joseph A. Fonti (*pro hac vice* admission forthcoming)

                  Jonathan Gardner (*pro hac vice* admission forthcoming)

15                   LABATON SUCHAROW LLP

                  140 Broadway

16                   New York, NY 10005

                  Telephone: 212-907-0700

17                   Facsimile: 212-818-0477

18                   John A. Kehoe (*pro hac vice* admission forthcoming)

                  Sharan Nirmul (*pro hac vice* admission forthcoming)

19                   Bharati O. Sharma (*pro hac vice* admission forthcoming)

                  BARROWAY TOPAZ KESSLER

20                   MELTZER & CHECK, LLP

                  280 King of Prussia Road

21                   Radnor, PA 19087

                  Telephone: 610-667-7706

22                   Facsimile: 610-667-7056

23                   *Counsel for Plaintiffs New Orleans Employees' Retirement System and MARTA/ATU Local 732 Employees Retirement Plan*

24

25

26

27

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

Case Number:        08-2-43598-9
Case Title:         New Orleans Employees' Retirement System, et al. vs The First
American Corp. & First American eAppraiseIT LLC
Document Title:     SUMMONS & COMPLAINT
User's Name:        Robert Stewart
Filed Date:         12/24/2008 11:59:45 AM

User Signed

Signed By:          Robert Stewart
WSBA #:             8998
Date:               12/24/2008 11:56:56 AM

1
2
3
4
5
6
7

8      IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
       IN AND FOR THE COUNTY OF KING
9

| NEW ORLEANS EMPLOYEES' | **CLASS ACTION** |
| RETIREMENT SYSTEM and MARTA/ATU | |
| LOCAL 732 EMPLOYEES RETIREMENT | Case No. |
| PLAN, individually and on behalf of all others | |
| similarly situated, | SUMMONS |

10
11
12
13

               Plaintiffs,

14         v.

THE FIRST AMERICAN CORPORATION and
15 FIRST AMERICAN eAPPRAISEIT, LLC,

16             Defendants.

17

18   TO THE DEFENDANT: **THE FIRST AMERICAN CORPORATION**

19        A lawsuit has been started against you in the above-entitled court by plaintiffs above-

20   named. Plaintiffs' claims are stated in the written complaint, a copy of which is served upon you

21   with this summons.

22        In order to defend against this lawsuit, you must respond to the Complaint by stating your

23   defense in writing, and serve a copy upon the person signing this Summons within 20 days after

24   the service of this Summons, excluding the day of service, or a default judgment may be entered

25   against you without notice. A default judgment is one where plaintiff is entitled to what it asks

26   for because you have not responded. If you serve a notice of appearance on the undersigned

27   person, you are entitled to notice before a default judgment may be entered.

SUMMONS - 1

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1    You may demand that the plaintiffs file this lawsuit with the court. If you do so, the

2   demand must be in writing and must be served upon the person signing this Summons. Within

3   14 days after you serve demand, the plaintiffs must file this lawsuit with the court, or the service

4   on you of this Summons and Complaint will be void.

5    If you wish to seek the advice of an attorney in this matter, you should do so promptly so

6   that your written response, if any, may be served on time.

7    This Summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State

8   of Washington.

9    DATED this 24th day of December, 2008.

10   KIPLING LAW GROUP PLLC

11

12   By: _____

13   Robert D. Stewart, WSBA #8998
     Timothy M. Moran, WSBA #24925

14   Joseph A. Fonti (*pro hac vice* admission forthcoming)
     Jonathan Gardner (*pro hac vice* admission forthcoming)
15   LABATON SUCHAROW LLP
     140 Broadway
16   New York, NY 10005
     Telephone: 212-907-0700
17   Facsimile: 212-818-0477

18   John A. Kehoe (*pro hac vice* admission forthcoming)
19   Sharan Nirmul (*pro hac vice* admission forthcoming)
     Bharati O. Sharma (*pro hac vice* admission forthcoming)
20   BARROWAY TOPAZ KESSLER
     MELTZER & CHECK, LLP
21   280 King of Prussia Road
     Radnor, PA 19087
22   Telephone: 610-667-7706
     Facsimile: 610-667-7056
23
     *Counsel for Plaintiffs New Orleans Employees' Retirement*
24   *System and MARTA/ATU Local 732 Employees Retirement*
     *Plan*
25

26

27

SUMMONS - 2

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1

2

3

4

5

6

7

8

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

9

| NEW ORLEANS EMPLOYEES' RETIREMENT SYSTEM and MARTA/ATU LOCAL 732 EMPLOYEES RETIREMENT PLAN, individually and on behalf of all others similarly situated, | **CLASS ACTION** |
|---|---|
| | Case No. |
| Plaintiffs, | **SUMMONS** |
| v. | |
| THE FIRST AMERICAN CORPORATION and FIRST AMERICAN eAPPRAISEIT, LLC, | |
| Defendants. | |

10

11

12

13

14

15

16

17

18   TO THE DEFENDANT: **FIRST AMERICAN eAPPRAISEIT, LLC**

19        A lawsuit has been started against you in the above-entitled court by plaintiffs above-

20   named. Plaintiffs' claims are stated in the written complaint, a copy of which is served upon you

21   with this summons.

22        In order to defend against this lawsuit, you must respond to the Complaint by stating your

23   defense in writing, and serve a copy upon the person signing this Summons within 20 days after

24   the service of this Summons, excluding the day of service, or a default judgment may be entered

25   against you without notice. A default judgment is one where plaintiff is entitled to what it asks

26   for because you have not responded. If you serve a notice of appearance on the undersigned

27   person, you are entitled to notice before a default judgment may be entered.

SUMMONS - 1

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1       You may demand that the plaintiffs file this lawsuit with the court. If you do so, the

2   demand must be in writing and must be served upon the person signing this Summons. Within

3   14 days after you serve demand, the plaintiffs must file this lawsuit with the court, or the service

4   on you of this Summons and Complaint will be void.

5       If you wish to seek the advice of an attorney in this matter, you should do so promptly so

6   that your written response, if any, may be served on time.

7       This Summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State

8   of Washington.

9       DATED this 29th day of December, 2008.

10          KIPLING LAW GROUP PLLC

11

12          By: _Robert D. Stewart_

13          Robert D. Stewart, WSBA #8998
            Timothy M. Moran, WSBA #24925

14          Joseph A. Fonti (*pro hac vice* admission forthcoming)
            Jonathan Gardner (*pro hac vice* admission forthcoming)

15          LABATON SUCHAROW LLP
            140 Broadway

16          New York, NY 10005

17          Telephone: 212-907-0700
            Facsimile: 212-818-0477

18

19          John A. Kehoe (*pro hac vice* admission forthcoming)
            Sharan Nirmul (*pro hac vice* admission forthcoming)

20          Bharati O. Sharma (*pro hac vice* admission forthcoming)
            BARROWAY TOPAZ KESSLER

21          MELTZER & CHECK, LLP
            280 King of Prussia Road

22          Radnor, PA 19087
            Telephone: 610-667-7706
            Facsimile: 610-667-7056

23

24          *Counsel for Plaintiffs New Orleans Employees' Retirement
            System and MARTA/ATU Local 732 Employees Retirement
            Plan*

25

26

27

SUMMONS - 2

**FILED**

08 DEC 24 AM 11:59

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 08-2-43598-9 SEA

## IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
## IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| New Orleans Employees' Retirement System, et al. | NO. 08-2-43598-9   SEA |
| | Order Setting Civil Case Schedule (*ORSCS) |
| vs                                  Plaintiff(s) | |
| The First American Corp. & First American eAppraiseIT LLC | ASSIGNED JUDGE  Washington          42 |
| | FILE DATE:                    12/24/2008 |
| Defendant(s) | TRIAL DATE:                  06/14/2010 |

A civil case has been filed in the King County Superior Court and will be managed by the Case Schedule on Page 3 as ordered by the King County Superior Court Presiding Judge.

### I. NOTICES

**NOTICE TO PLAINTIFF:** The Plaintiff may serve a copy of this **Order Setting Case Schedule** (**Schedule**) on the Defendant(s) along with the **Summons and Complaint/Petition.** Otherwise, the Plaintiff shall serve the *Schedule* on the Defendant(s) within 10 days after the later of: (1) the filing of the **Summons and Complaint/Petition** or (2) service of the Defendant's first response to the **Complaint/Petition**, whether that response is a **Notice of Appearance**, a response, or a Civil Rule 12 (CR 12) motion. The **Schedule** may be served by regular mail, with proof of mailing to be filed promptly in the form required by Civil Rule 5 (CR 5).

*"I understand that I am required to give a copy of these documents to all parties in this case."*

_____ | _____

Print Name                                          Sign Name

Order Setting Civil Case Schedule (*ORSCS)                                    REV. 12/08    1

## I. NOTICES (continued)

**NOTICE TO ALL PARTIES:**
All attorneys and parties should make themselves familiar with the King County Local Rules [*KCLR*] --
especially those referred to in this *Schedule*. In order to comply with the *Schedule*, it will be necessary for
attorneys and parties to pursue their cases vigorously from the day the case is filed. For example,
discovery must be undertaken promptly in order to comply with the deadlines for joining additional parties,
claims, and defenses, for disclosing possible witnesses [*See KCLR 26*], and for meeting the discovery
cutoff date [*See KCLR 37(g)*].

**CROSSCLAIMS, COUNTERCLAIMS AND THIRD PARTY COMPLAINTS:**
A filing fee of **$200** must be paid when any answer that includes additional claims is filed in an existing
case.

**KCLCR 4.2(a)(2)**
A Confirmation of Joinder, Claims and Defenses or a Statement of Arbitrability must be filed by the
deadline in the schedule. The court will review the confirmation of joinder document to determine if a
hearing is required. If a Show Cause order is issued, all parties cited in the order must appear before
their Chief Civil Judge.

**PENDING DUE DATES CANCELED BY FILING PAPERS THAT RESOLVE THE CASE:**
When a final decree, judgment, or order of dismissal of all parties and claims is filed with the Superior
Court Clerk's Office, and a courtesy copy delivered to the assigned judge, all pending due dates in this
*Schedule* are automatically canceled, including the scheduled Trial Date. It is the responsibility of the
parties to 1) file such dispositive documents within 45 days of the resolution of the case, and 2) strike any
pending motions by notifying the bailiff to the assigned judge.

Parties may also authorize the Superior Court to strike all pending due dates and the Trial Date by filing a
*Notice of Settlement* pursuant to KCLCR 41, and forwarding a courtesy copy to the assigned judge. If a
final decree, judgment or order of dismissal of all parties and claims is not filed by 45 days after a *Notice
of Settlement*, the case may be dismissed with notice.

**If you miss your scheduled Trial Date,** the Superior Court Clerk is authorized by KCLCR 41(b)(2)(A) to
present an *Order of Dismissal*, without notice, for failure to appear at the scheduled Trial Date.

**NOTICES OF APPEARANCE OR WITHDRAWAL AND ADDRESS CHANGES:**
*All parties to this action must keep the court informed of their addresses.* When a Notice of
Appearance/Withdrawal or Notice of Change of Address is filed with the Superior Court Clerk's Office,
parties must provide the assigned judge with a courtesy copy.

**ARBITRATION FILING AND TRIAL DE NOVO POST ARBITRATION FEE:**
A Statement of Arbitrability must be filed by the deadline on the schedule **if the case is subject to
mandatory arbitration** and service of the original complaint and all answers to claims, counterclaims and
cross-claims have been filed. If mandatory arbitration is required after the deadline, parties must obtain
an order from the assigned judge transferring the case to arbitration. **Any party filing a Statement must
pay a $220 arbitration fee.** If a party seeks a trial de novo when an arbitration award is appealed, a fee of
$250 and the request for trial de novo must be filed with the Clerk's Office Cashiers.

**NOTICE OF NON-COMPLIANCE FEES:**
All parties will be assessed a fee authorized by King County Code 4.71.050 whenever the Superior Court
Clerk must send notice of non-compliance of schedule requirements and/or Local Civil Rule 41.

**King County Local Rules are available for viewing at www.kingcounty.gov/courts/clerk.**

## II. CASE SCHEDULE

| CASE EVENT | DEADLINE or EVENT DATE | Filing Needed |
|---|---|---|
| Case Filed and Schedule Issued. | Wed 12/24/2008 | * |
| Last Day for Filing Statement of Arbitrability without a Showing of Good Cause for Late Filing [See KCLMAR 2.1(a) and Notices on Page 2]. **$220 arbitration fee must be paid** | Wed 06/03/2009 | * |
| **DEADLINE** to file Confirmation of Joinder if not subject to Arbitration. [See KCLCR 4.2(a) and Notices on Page 2]. | Wed 06/03/2009 | * |
| **DEADLINE** for Hearing Motions to Change Case Assignment Area. [See KCLCR 82(e)] | Wed 06/17/2009 | |
| **DEADLINE** for Disclosure of Possible Primary Witnesses [See KCLCR 26(b)]. | Mon 01/11/2010 | |
| **DEADLINE** for Disclosure of Possible Additional Witnesses [See KCLCR 26(b)]. | Mon 02/22/2010 | |
| **DEADLINE** for Jury Demand [See KCLCR 38(b)(2)]. | Mon 03/08/2010 | * |
| **DEADLINE** for Setting Motion for a Change in Trial Date [See KCLCR 40(d)(2)]. | Mon 03/08/2010 | * |
| **DEADLINE** for Discovery Cutoff [See KCLCR 37(g)]. | Mon 04/26/2010 | |
| **DEADLINE** for Engaging in Alternative Dispute Resolution [See KCLCR 16(b)]. | Mon 05/17/2010 | |
| **DEADLINE** for Exchange Witness & Exhibit Lists & Documentary Exhibits [See KCLCR 4(j)]. | Mon 05/24/2010 | |
| **DEADLINE** to file Joint Confirmation of Trial Readiness [See KCLCR 16(a)(2)] | Mon 05/24/2010 | * |
| **DEADLINE** for Hearing Dispositive Pretrial Motions [See KCLCR 56; CR 56]. | Tue 06/01/2010 | |
| Joint Statement of Evidence [See KCLCR (4)(k)]. | Mon 06/07/2010 | * |
| **DEADLINE** for filing Trial Briefs, Proposed Findings of Fact and Conclusions of Law and Jury Instructions (Do not file Proposed Findings of Fact and Conclusions of Law with the Clerk) | Mon 06/07/2010 | * |
| Trial Date [See KCLCR 40]. | Mon 06/14/2010 | |

### III. ORDER

Pursuant to King County Local Civil Rule 4 [KCLCR 4], IT IS ORDERED that the parties shall comply with the schedule listed above. Penalties, including but not limited to sanctions set forth in Local Civil Rule 4(g) and Rule 37 of the Superior Court Civil Rules, may be imposed for non-compliance. It is FURTHER ORDERED that the party filing this action **must** serve this Order Setting Civil Case Schedule and attachment on all other parties.

DATED:   12/24/2008

**PRESIDING JUDGE**

## IV. ORDER ON CIVIL PROCEEDINGS FOR ASSIGNMENT TO JUDGE

### READ THIS ORDER BEFORE CONTACTING YOUR ASSIGNED JUDGE
This case is assigned to the Superior Court Judge whose name appears in the caption of this case schedule. The assigned Superior Court Judge will preside over and manage this case for all pretrial matters.

**COMPLEX LITIGATION:** If you anticipate an unusually complex or lengthy trial, please notify the assigned court as soon as possible.

**APPLICABLE RULES:** Except as specifically modified below, all the provisions of King County Local Civil Rules 4 through 26 shall apply to the processing of civil cases before Superior Court Judges. The local civil rules can be found at http://www.kingcounty.gov/courts/superiorcourt/civil.aspx .

### CASE SCHEDULE AND REQUIREMENTS
Deadlines are set by the case schedule, issued pursuant to Local Civil Rule 4.

### THE PARTIES ARE RESPONSIBLE FOR KNOWING AND COMPLYING WITH ALL DEADLINES IMPOSED BY THE COURT'S LOCAL CIVIL RULES.

#### A. Joint Confirmation regarding Trial Readiness Report:
No later than twenty one (21) days before the trial date, parties shall complete and file (with a copy to the assigned judge) a joint confirmation report setting forth whether a jury demand has been filed, the expected duration of the trial, whether a settlement conference has been held, and special problems and needs (e.g. interpreters, equipment, etc.).

The form is available at http://www.kingcounty.gov/courts/superiorcourt.aspx .  If parties wish to request a CR 16 conference, they must contact the assigned court.  Plaintiff's/petitioner's counsel is responsible for contacting the other parties regarding said report.

#### B. Settlement/Mediation/ADR
a. Forty five (45) days before the trial date, counsel for plaintiff/petitioner shall submit a written settlement demand. Ten (10) days after receiving plaintiff's/petitioner's written demand, counsel for defendant/respondent shall respond (with a counter offer, if appropriate).

b. Twenty eight (28) days before the trial date, a Settlement/Mediation/ADR conference shall have been held. FAILURE TO COMPLY WITH THIS SETTLEMENT CONFERENCE REQUIREMENT MAY RESULT IN SANCTIONS.

**C. Trial:** Trial is scheduled for 9:00 a.m. on the date on the case schedule or as soon thereafter as convened by the court. The Friday before trial, the parties should access the King County Superior Cour website http://www.kingcounty.gov/courts/superiorcourt.aspx to confirm trial judge assignment. Information can also be obtained by calling (206) 205-5984.

### MOTIONS PROCEDURES

#### A. Noting of Motions

**Dispositive Motions:** All summary judgment or other dispositive motions will be heard with oral argument before the assigned judge. The moving party must arrange with the hearing judge a date and time for the hearing, consistent with the court rules. Local Civil Rule 7 and Local Civil Rule 56 govern procedures for summary judgment or other motions that dispose of the case in whole or in part. The local civil rules can be found at http://www.kingcounty.gov/courts/superiorcourt/civil.aspx.

**Nondispositive Motions:** These motions, which include discovery motions, will be ruled on by the assigned judge without oral argument, unless otherwise ordered. All such motions must be noted for a date by which the ruling is requested; this date must likewise conform to the applicable notice requirements. Rather than noting a time of day, the Note for Motion should state "Without Oral Argument." Local Civil Rule 7 governs these motions, which include discovery motions. The local civil rules can be found at http://www.kingcounty.gov/courts/superiorcourt/civil.aspx.

**Motions in Family Law Cases not involving children:** Discovery motions to compel, motions in limine, motions relating to trial dates and motions to vacate judgments/dismissals shall be brought before the assigned judge. All other motions should be noted and heard on the Family Law Motions calendar. Local Civil Rule 7 and King County Family Law Local Rules govern these procedures. The local rules can be found at http://www.kingcounty.gov/courts/superiorcourt/civil.aspx.

**Emergency Motions:** Under the court's local civil rules, emergency motions will be allowed only upon entry of an Order Shortening Time. However, emergency discovery disputes may be addressed by telephone call and without written motion, if the judge approves.

**B. Original documents/working copies Filing of Documents**

**All original documents must be filed with the Clerk's Office.**

The working copies of all documents in support or opposition must be marked on the upper right corner of the first page with the date of consideration or hearing and the name of the assigned judge. The assigned judge's working copies must be delivered to his/her courtroom or the Judges' mailroom. Working copies of motions to be heard on the Family Law Motions Calendar should be filed with the Family Law Motions Coordinator.

**Original Proposed Order:** Each of the parties must include an original proposed order granting requested relief with the working copy materials submitted on any motion. Do not file the original of the proposed order with the Clerk of the Court. Should any party desire a copy of the order as signed and filed by the judge, a pre-addressed, stamped envelope shall accompany the proposed order.

**Presentation of Orders:** All orders, agreed or otherwise, must be presented to the assigned judge. If that judge is absent, contact the assigned court for further instructions. If another judge enters an order on the case, counsel is responsible for providing the assigned judge with a copy.

**Proposed orders finalizing settlement and/or dismissal by agreement of all parties shall be presented to the assigned judge or in the Ex Parte Department.** Formal proof in Family Law cases must be scheduled before the assigned judge by contacting the bailiff, or formal proof may be entered in the Ex Parte Department. **If final order and/or formal proof are entered in the Ex Parte Department, counsel is responsible for providing the assigned judge with a copy.**

## C.  Form

Memoranda/briefs for matters heard by the assigned judge may not exceed twenty four (24) pages for dispositive motions and twelve (12) pages for nondispositive motions, unless the assigned judge permits over-length memoranda/briefs in advance of filing.  Over-length memoranda/briefs and motions supported by such memoranda/briefs may be stricken.

*IT IS SO ORDERED.  FAILURE TO COMPLY WITH THE PROVISIONS OF THIS ORDER MAY RESULT IN DISMISSAL OR OTHER SANCTIONS.  PLAINTIFF/PEITITONER SHALL FORWARD A COPY OF THIS ORDER AS SOON AS PRACTICABLE TO ANY PARTY WHO HAS NOT RECEIVED THIS ORDER.*

**PRESIDING JUDGE**

**FILED**

08 DEC 24 AM 11:59

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 08-2-43598-9 SEA

## SUPERIOR COURT OF WASHINGTON
## COUNTY OF KING

| | |
|---|---|
| New Orleans Employees' Retirement S | NO. 08-2-43598-9 SEA |
| VS | |
| The First American Corp. & First Americ | CASE INFORMATION COVER SHEET AND AREA DESIGNATION |

### CAUSE OF ACTION

**(MSC) -**     Other Complaints/Petition

### AREA DESIGNATION

**SEATTLE -**    Defined as all King County north of Interstate 90 and including all of Interstate 90 right of way, all of the cities of Seattle, Mercer Island, Issaquah, and North Bend, and all of Vashon and Maury Islands.

FILED

2009 JAN 12 AM 11: 24

KING COUNTY
SUPERIOR COURT CLERK
SEATTLE, WA.

## IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON FOR THE COUNTY OF KING

**NEW ORLEANS EMPLOYEES' RETIREMENT SYSTEM and MARTA/ATU LOCAL 732 EMPLOYEES RETIREMENT PLAN, individually and on behalf of all others similarly situated**

           Plaintiff(s),

vs.

**THE FIRST AMERICAN CORPORATION and THE FIRST AMERICAN eAPPRAISEIT, LLC**

           Defendant(s).

**Case No.: 08–2–43598–9 SEA**

**DECLARATION OF SERVICE**



State of Washington
County of King    ss.

The undersigned, being first duly sworn on oath deposes and says: That he/she is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen years, not a party to or interested in the above entitled action and competent to be a witness therein.

That on **01/02/2009** at **3:14 PM**, at the address of **6500 Harbor Heights Pkwy suite 400, Mukilteo**, within **SNOHOMISH** County, **WA**, the undersigned duly served the following document(s): **SUMMONS; CLASS ACTION COMPLAINT; ORDER SETTING CIVIL CASE SCHEDULE** in the above entitled action upon **The First American Corporation**, by then and there personally delivering 1 true and correct copy(ies) of the above documents into the hands of and leaving same with **Linda Reed Customer Service Representative for Corporation Services Company**, who is authorized to accept service on behalf of the above.

**I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct:**

Date: 1/9/09

X _Keith Boddy-Ross_
**Keith Boddy–Ross**
Process Server
Pacific Coast Attorney Services LLC
16256 Military Rd S, Suite 207
Seatac, WA 98188
206.652.2692

**TOTAL:**        **$20.00**

*17553*

FILED

2009 JAN 12  AM 11: 24

COUNTY
SUPERIOR COURT CLERK
SEATTLE. WA.

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON FOR THE
COUNTY OF KING

NEW ORLEANS EMPLOYEES' RETIREMENT
SYSTEM and MARTA/ATU LOCAL 732 EMPLOYEES
RETIREMENT PLAN, individually and on behalf of all
others similarly situated

              Plaintiff(s),

vs.

THE FIRST AMERICAN CORPORATION and THE
FIRST AMERICAN eAPPRAISEIT, LLC

              Defendant(s).

Case No.: 08-2-43598-9 SEA

**DECLARATION OF SERVICE**

State of Washington
County of King    ss.

The undersigned, being first duly sworn on oath deposes and says: That he/she is now and at all times
herein mentioned was a citizen of the United States, over the age of eighteen years, not a party to or
interested in the above entitled action and competent to be a witness therein.

That on **01/02/2009 at 3:14 PM**, at the address of **6500 Harbor Heights Pkwy Suite 400, Mukilteo**,
within **SNOHOMISH** County, **WA**, the undersigned duly served the following document(s):
**SUMMONS; CLASS ACTION COMPLAINT; ORDER SETTING CIVIL CASE SCHEDULE** in
the above entitled action upon eAppraiseIT, LLC, by then and there personally delivering 1 true and
correct copy(ies) of the above documents into the hands of and leaving same with **Linda Reed, Customer
Service Representative for Corporation Services Company** who is authorized to accept service on
behalf of the above.

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is
true and correct:

Date: 1/9/09

TOTAL:                 **$45.00**

\*17002\*

X _____
**Keith Boddy-Ross**
Process Server
Pacific Coast Attorney Services LLC
16256 Military Rd S, Suite 207
Seatac, WA 98188
206.652.2692

**FILED**

09 JAN 21 PM 3:25

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 08-2-43598-9 SEA

## IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
## FOR THE COUNTY OF KING

| | |
|---|---|
| NEW ORLEANS EMPLOYEES' RETIREMENT SYSTEM, et al.<br><br>v.<br><br>eAPPRAISEIT, LLC, et al. | **NO. 08-2-43598-9 SEA**<br>**NOTICE FOR HEARING**<br>**SEATTLE COURTHOUSE ONLY**<br>(Clerk's Action Required )  (NTHG) |

**TO:    THE CLERK OF THE COURT** and to all other parties listed on Page 2:
**PLEASE TAKE NOTICE** that an issue of law in this case will be heard on the date below and the Clerk is directed to note this issue on the calendar checked below.

**Calendar Date:**     January 30, 2009                        Day of Week:     **Friday**

**Nature of Motion:**    Plaintiffs' Motions for Limited Admission Pursuant to APR 8(b)

---

**CASES ASSIGNED TO INDIVIDUAL JUDGES – Seattle**
If oral argument on the motion is allowed (LR 7(b)(2)), contact staff of assigned judge to schedule date and time before filing this notice. Working Papers: The *judge's name*, date and time of hearing *must* be noted in the upper right corner of the Judge's copy. *Deliver Judge's copies to Judges' Mailroom at C203.*

[X] Without oral argument (Mon - Fri)         [ ] With oral argument Hearing
Date/Time:
Judge's Name:   Hon. Chris Washington          Trial Date:     June 14, 2010

---

**CHIEF CRIMINAL DEPARTMENT - Seattle in E1201**
[ ] Bond Forfeiture  3:15 pm, 2$^{nd}$ Thur of each month
[ ] Certificates of Rehabilitation- Weapon Possession (**Convictions from Limited Jurisdiction Courts**) 3:30 First Tues of each month

---

**CHIEF CIVIL DEPARTMENT – Seattle -- (Please report to W1060 for assignment)**
*Deliver working copies to Judges' Mailroom, Room C203. In upper right corner of papers write "Chief Civil Department" or judge's name and date of hearing*

| | |
|---|---|
| [ ] Extraordinary Writs (Show Cause Hearing) (LR 98.40)  1:30 p.m. Tues/Wed -report to Room W1060 | |
| [ ] Supplemental Proceedings<br>   (1:30 pm Tues/Wed)(LR 69)<br>[ ] DOL Stays 1:30 pm Tues/Wed<br>[ ] Motions to Consolidate with multiple judges assigned<br>(without oral argument) (LR 40(a)(4)) | **Non-Assigned Cases:**<br>[ ] Non-Dispositive Motions M-F (without oral argument).<br>[ ] Dispositive Motions and Revisions (1:30 pm Tues/Wed)<br>[ ] Certificates of Rehabilitation (**Employment**) 1:30 pm Tues/Wed (LR 40(2)(B)) |

---

**You may list an address that is not your residential address where you agree to accept legal documents.**

Sign:  _Timothy M. Moran_     Print/Type Name:     Timothy M. Moran

WSBA #   24925        (if attorney)     Attorney for:     Plaintiffs

Address: 3601 Fremont Ave. N., Suite 414   City, State, Zip Seattle, WA 98103

Telephone: 206-545-0345            Date:    January 21, 2009

**DO NOT USE THIS FORM FOR FAMILY LAW, EX PARTE OR RALJ MOTIONS.**

---

| LIST NAMES AND SERVICE ADDRESSES FOR ALL NECESSARY PARTIES REQUIRING NOTICE |
|---|

Name S. Keehnel / C. Huck / B. Meissner

Service Address: DLA Piper LLP (US)

701 Fifth Avenue, Suite 7000

City, State, Zip: Seattle, WA 98104-7044

WSBA#9309/34104/39592 Atty For: Defendants

Telephone #: 206.839.4800

E-mail: stellman.keehnel@dlapiper.com

E-mail: christopher.huck@dlapiper.com

E-mail: bradley.meissner@dlapiper.com


Name R. Hans / K. Cunningham / C. Delaney

Service Address: DLA Piper LLP (US)

1251 Avenue of the Americas, 27th Flr

City, State, Zip: New York, NY 10020-1104

WSBA#_____ Atty For: Defendants

Telephone #: 212.335.4500

E-mail: richard.hans@dlapiper.com

E-mail: kerry.cunningham@dlapiper.com

E-mail: corey.delaney@dlapiper.com


Name_____

Service Address:_____

City, State, Zip_____

WSBA#_____ Atty For:_____

Telephone #:_____


Name_____

Service Address:_____

City, State, Zip_____

WSBA#_____ Atty For:_____

Telephone #:_____


Name_____

Service Address:_____

City, State, Zip_____

WSBA#_____ Atty For:_____

Telephone #:_____


Name_____

Service Address:_____

City, State, Zip_____

WSBA#_____ Atty For:_____

Telephone #:_____


## IMPORTANT NOTICE REGARDING CASES

Party requesting hearing must file motion & affidavits separately along with this notice. List the names, addresses and telephone numbers of all parties requiring notice (including GAL) on this page. Serve a copy of this notice, with motion documents, on all parties.

The original must be filed at the Clerk's Office not less than six court days prior to requested hearing date, except for Summary Judgment Motions (to be filed with Clerk 28 days in advance).

THIS IS ONLY A PARTIAL SUMMARY OF THE LOCAL RULES AND ALL PARTIES ARE ADVISED TO CONSULT WITH AN ATTORNEY.

The SEATTLE COURTHOUSE is in Seattle, Washington at 516 Third Avenue. The Clerk's Office is on the sixth floor, room E609. The Judges' Mailroom is Room C203.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

Case Number:        08-2-43598-9
Case Title:         NEW ORLEANS EMPLOYEES RETIREMENT ET ANO VS FIRST AMERICAN CORP
ET ANO
Document Title:     NOTE FOR CALENDAR
User's Name:        Timothy Moran
Filed Date:         1/21/2009 3:25:14 PM

User Signed

Signed By:      Timothy Moran
WSBA #:         24925
Date:           1/21/2009 3:21:32 PM

FILED

09 JAN 21 PM 3:25

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 08-2-43598-9 SEA

HONORABLE CHRIS WASHINGTON
*Hearing Date: Friday, January 30, 2009*
*Without Oral Argument*

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| NEW ORLEANS EMPLOYEES' RETIREMENT SYSTEM and MARTA/ATU LOCAL 732 EMPLOYEES RETIREMENT PLAN, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>THE FIRST AMERICAN CORPORATION and FIRST AMERICAN eAPPRAISEIT, LLC,<br><br>        Defendants. | **CLASS ACTION**<br><br>Case No. 08-2-43598-9 SEA<br><br>MOTION FOR LIMITED ADMISSION OF JONATHAN GARDNER PURSUANT TO APR 8(b) (PRO HAC VICE) AND [PROPOSED] ORDER |

## I.    RELIEF REQUESTED

The Moving Party named below moves the court for the limited admission of the Applicant for Limited Admission named below for the purpose of appearing as a lawyer in this proceeding.

**Identity of Moving Party** (Washington State Bar Association Member):

Name:     Timothy M. Moran          WSBA No.  24925

Address:    Kipling Law Group PLLC

        3601 Fremont Ave. N., Suite 414, Seattle, WA 98103

Telephone No.  206-545-0345    Email:    moran@kiplinglawgroup.com

MOTION FOR LIMITED ADMISSION OF JONATHAN
GARDNER PURSUANT TO APR 8(B) (PRO HAC VICE)
AND ORDER - 1
(08-2-43598-9 SEA)

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1    **Identity of Applicant for Limited Admission:**

2    Name: _____ Jonathan Gardner _____    Bar No. _ NY 2384394 ___

3    Jurisdiction of Primary Practice: ___ New York _____

4    Address: ____ Labaton Sucharow LLP _____

5
6         _____ 140 Broadway, Floor 34, New York, NY 10005 _____

7    Telephone No. _212-907-0700_ Email: _____ jgardner@labaton.com ___

8    Washington Address (if applicable): _____

9         _____

10   Telephone No. _____ Email: _____

11
                    **II.    STATEMENT OF THE FACTS**

12        Plaintiffs have filed this action in King County Superior Court against corporate

13   defendants that include several Washington corporations whose principal place of business is in

14   Seattle, and against individual defendants who are or were employed by or otherwise associated

15   with one or more of those defendants. The Applicant for Limited Admission meets the

16   qualifications for limited admission that are set forth in APR 8(b).

17                   **III.    STATEMENT OF THE ISSUE**

18        The following issue is presented for resolution by the court:

19        Should the Applicant for Limited Admission named above be granted limited admission

20   to the practice of law pursuant to APR 8(b) for the purpose of appearing as a lawyer in this

21   proceeding?

22                   **IV.    EVIDENCE RELIED UPON**

23        This motion is based on the accompanying certifications of the Moving Party and the

24   Applicant for Limited Admission.

25                   **V.    LEGAL AUTHORITY**

26        This motion is made pursuant to Rule 8(b) of the Admission to Practice Rules (APR).

27

MOTION FOR LIMITED ADMISSION OF JONATHAN
GARDNER PURSUANT TO APR 8(B) (PRO HAC VICE)
AND ORDER - 2
(08-2-43598-9 SEA)

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

## VI.    PROPOSED ORDER

A proposed order granting the relief requested accompanies this motion.

RESPECTFULLY SUBMITTED this 21ˢᵗ day of _Ja nuary_ , 2009.

_Timothy M Moran_

Timothy M. Moran, WSBA No. 24925
Moving Party

### CERTIFICATION OF APPLICANT FOR LIMITED ADMISSION

I hereby certify under penalty of perjury under the laws of the State of Washington that:

    1.  I am a member in good standing of the bar of the state or territory of the United States or of the District of Columbia listed above as my jurisdiction of primary practice.

    2.  I am a resident of and maintain a law practice in that jurisdiction of primary practice.

    3.  I have read the Rules of Professional Conduct adopted by the Supreme Court of the State of Washington and agree to abide by them.

    4.  I have complied with all of the requirements of APR 8(b).

    5.  I have read the foregoing motion and certification and the statements contained in it are full, true and correct.

Signed on    1/19/09    at    New York, New York.

Jonathan Gardner, Applicant for Limited Admission

### CERTIFICATION OF MOVING PARTY/WSBA MEMBER

I hereby certify under penalty of perjury under the laws of the State of Washington that:

    1.  I am an active member in good standing of the Washington State Bar Association.

    2.  I will be the lawyer of record in this proceeding, responsible for the conduct of the

MOTION FOR LIMITED ADMISSION OF JONATHAN
GARDNER PURSUANT TO APR 8(B) (PRO HAC VICE)
AND ORDER - 3
(08-2-43598-9 SEA)

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1    applicant, and present at proceedings in this matter unless excused by the court.

2        3.   I have submitted a copy of this motion together with the required fee of $250 to the

3    Washington State Bar Association, 1325 4th Ave., Ste. 600, Seattle, WA 98101-2539.

4        4.   I have complied with all of the requirements of APR 8(b).

5        5.   I have read the foregoing motion and certification and the statements contained in it

6    are full, true and correct.

7

8        Signed on _____ Jan. 21, 2009 _____ at Seattle, Washington.

9

10                              Timothy M Mora
                               Timothy M. Moran, Moving Party

11

12                                **ORDER**

13        It is hereby ORDERED that the Applicant for Limited Admission pursuant to APR 8(b)

14   listed above is admitted to practice as a lawyer in this proceeding.  The Moving Party shall be the

15   lawyer of record herein, is responsible for the conduct hereof, and shall be present at all

16   proceedings unless excused by this court.

17

18        Dated _____.

19

20                              _____
                               JUDGE CHRIS WASHINGTON

21

22

23

24

25

26

27

MOTION FOR LIMITED ADMISSION OF JONATHAN              KIPLING LAW GROUP PLLC
GARDNER PURSUANT TO APR 8(B) (PRO HAC VICE)          3601 FREMONT AVE N, SUITE 414
AND ORDER - 4                                         SEATTLE, WASHINGTON 98103
(08-2-43598-9 SEA)                                   telephone (206) 545-0345
                                                     fax (206) 545-0350

1

**CERTIFICATE OF SERVICE**

2       I do hereby certify that on this ⟨21st⟩ day of January, 2009, I caused to be served a true

3   and correct copy of the foregoing *Motion for Limited Admission of Jonathan Gardner Pursuant*

4   *to APR 8(b) (Pro Hac Vice) and Order* by method indicated below and addressed to the

5   following:

6   By: [☐] U.S. Mail [☐] Overnight Mail [☐] Facsimile [☐] Hand Delivered [X] E-Mail

7   Stellman Keehnel                          Richard F. Hans
    Christopher Huck                          Kerry F. Cunningham
8   Bradley T. Meissner                       Corey Elanor Delaney
    DLA Piper LLP (US)                        DLA Piper LLP (US)
9   701 Fifth Avenue, Suite 7000              1251 Avenue of the Americas, 27th Floor
    Seattle, WA 98104-7044                    New York, NY 10020-1104
10  E-mail: stellman.keehnel@dlapiper.com     E-mail: richard.hans@dlapiper.com
11  E-mail: christopher.huck@dlapiper.com     E-mail: kerry.cunningham@dlapiper.com
    E-mail: bradley.meissner@dlapiper.com     E-mail: corey.delaney@dlapiper.com
12
                          *Counsel for Defendants*
13

14

15  _____
    Carol A. Cannon, Legal Assistant
16

17

18

19

20

21

22

23

24

25

26

27

MOTION FOR LIMITED ADMISSION OF JONATHAN
GARDNER PURSUANT TO APR 8(B) (PRO HAC VICE)
AND ORDER - 5
(08-2-43598-9 SEA)

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

Case Number:          08-2-43598-9
Case Title:           NEW ORLEANS EMPLOYEES RETIREMENT ET ANO VS FIRST AMERICAN CORP
ET ANO
Document Title:       MOTION OF PLAINTIFFS RE MOTION FOR LIMITED ADMISSION OF
JONATHAN GARDNER
User's Name:          Timothy Moran
Filed Date:           1/21/2009 3:25:14 PM

User Signed

Signed By:      Timothy Moran
WSBA #:         24925
Date:           1/21/2009 3:21:33 PM

FILED

09 JAN 21 PM 3:25

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 08-2-43598-9 SEA

HONORABLE CHRIS WASHINGTON
*Hearing Date: Friday, January 30, 2009*
*Without Oral Argument*

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| NEW ORLEANS EMPLOYEES' RETIREMENT SYSTEM and MARTA/ATU LOCAL 732 EMPLOYEES RETIREMENT PLAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE FIRST AMERICAN CORPORATION and FIRST AMERICAN eAPPRAISEIT, LLC,<br><br>Defendants. | **CLASS ACTION**<br><br>Case No. 08-2-43598-9 SEA<br><br>MOTION FOR LIMITED ADMISSION OF SERENA RICHARDSON PURSUANT TO APR 8(b) (PRO HAC VICE) AND [PROPOSED] ORDER |

## I.   RELIEF REQUESTED

The Moving Party named below moves the court for the limited admission of the Applicant for Limited Admission named below for the purpose of appearing as a lawyer in this proceeding.

**Identity of Moving Party** (Washington State Bar Association Member):

Name: ___Timothy M. Moran___ WSBA No. __24925__

Address: ___Kipling Law Group PLLC___

___3601 Fremont Ave. N., Suite 414, Seattle, WA 98103___

Telephone No. __206-545-0345__ Email: ___moran@kiplinglawgroup.com___

MOTION FOR LIMITED ADMISSION OF SERENA
RICHARDSON PURSUANT TO APR 8(B) (PRO HAC
VICE) AND ORDER - 1
(08-2-43598-9 SEA)

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1

**Identity of Applicant for Limited Admission:**

2

Name: _____Serena Richardson_____ Bar No._NY 4244950_

3

Jurisdiction of Primary Practice: ___New York_____

4

Address: ____Labaton Sucharow LLP_____

5

6

_____140 Broadway, Floor 34, New York, NY 10005_____

7

Telephone No. _212-907-0700___ Email: ____srichardson@labaton.com__

8

Washington Address (if applicable): _____

9

_____

10

Telephone No. _____ Email: _____

11

## II.    STATEMENT OF THE FACTS

12

Plaintiffs have filed this action in King County Superior Court against corporate

13

defendants that include several Washington corporations whose principal place of business is in

14

Seattle, and against individual defendants who are or were employed by or otherwise associated

15

with one or more of those defendants. The Applicant for Limited Admission meets the

16

qualifications for limited admission that are set forth in APR 8(b).

17

## III.    STATEMENT OF THE ISSUE

18

The following issue is presented for resolution by the court:

19

Should the Applicant for Limited Admission named above be granted limited admission

20

to the practice of law pursuant to APR 8(b) for the purpose of appearing as a lawyer in this

21

proceeding?

22

## IV.    EVIDENCE RELIED UPON

23

This motion is based on the accompanying certifications of the Moving Party and the

24

Applicant for Limited Admission.

25

## V.    LEGAL AUTHORITY

26

This motion is made pursuant to Rule 8(b) of the Admission to Practice Rules (APR).

27

MOTION FOR LIMITED ADMISSION OF SERENA
RICHARDSON PURSUANT TO APR 8(B) (PRO HAC
VICE) AND ORDER - 2
(08-2-43598-9 SEA)

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1

## VI.    PROPOSED ORDER

2    A proposed order granting the relief requested accompanies this motion.

3    RESPECTFULLY SUBMITTED this 21ˢᵗ day of January , 2009.

4

5    *Timothy M Moran*

6    Timothy M. Moran, WSBA No. 24925
     Moving Party

7

8    ## CERTIFICATION OF APPLICANT FOR LIMITED ADMISSION

9    I hereby certify under penalty of perjury under the laws of the State of Washington that:

10    1.    I am a member in good standing of the bar of the state or territory of the United States

11    or of the District of Columbia listed above as my jurisdiction of primary practice.

12    2.    I am a resident of and maintain a law practice in that jurisdiction of primary practice.

13

14    3.    I have read the Rules of Professional Conduct adopted by the Supreme Court of the

15    State of Washington and agree to abide by them.

16    4.    I have complied with all of the requirements of APR 8(b).

17    5.    I have read the foregoing motion and certification and the statements contained in it

18    are full, true and correct.

19    Signed on ____1/9/09____ at ____New York, New York____.

20

21    *M*

22    Serena Richardson, Applicant for Limited Admission

23    ## CERTIFICATION OF MOVING PARTY/WSBA MEMBER

24    I hereby certify under penalty of perjury under the laws of the State of Washington that:

25    1.    I am an active member in good standing of the Washington State Bar Association.

26    2.    I will be the lawyer of record in this proceeding, responsible for the conduct of the

27

MOTION FOR LIMITED ADMISSION OF SERENA
RICHARDSON PURSUANT TO APR 8(B) (PRO HAC
VICE) AND ORDER - 3
(08-2-43598-9 SEA)

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1  applicant, and present at proceedings in this matter unless excused by the court.

2      3.  I have submitted a copy of this motion together with the required fee of $250 to the

3  Washington State Bar Association, 1325 4th Ave., Ste. 600, Seattle, WA 98101-2539.

4      4.  I have complied with all of the requirements of APR 8(b).

5      5.  I have read the foregoing motion and certification and the statements contained in it

6

7  are full, true and correct.

8      Signed on _____ *Jan. 21, 2009* _____ at Seattle, Washington.

9

10                             *Timothy M Moran*
                            Timothy M. Moran, Moving Party

11

12                                  **ORDER**

13

14      It is hereby ORDERED that the Applicant for Limited Admission pursuant to APR 8(b)

15  listed above is admitted to practice as a lawyer in this proceeding.  The Moving Party shall be the

16  lawyer of record herein, is responsible for the conduct hereof, and shall be present at all

17  proceedings unless excused by this court.

18      Dated _____.

19

20                                  JUDGE CHRIS WASHINGTON

21

22

23

24

25

26

27

Kipling Law Group PLLC
3601 Fremont Ave N, Suite 414
Seattle, Washington 98103
telephone (206) 545-0345
fax (206) 545-0350

1  **CERTIFICATE OF SERVICE**

2      I do hereby certify that on this __21ˢᵗ__ day of January, 2009, I caused to be served a true

3  and correct copy of the foregoing *Motion for Limited Admission of Serena Richardson Pursuant*

4  *to APR 8(b) (Pro Hac Vice) and Order* by method indicated below and addressed to the

5  following:

6  By:  [☐] U.S. Mail  [☐] Overnight Mail  [☐] Facsimile  [☐] Hand Delivered  [X] E-Mail

7  Stellman Keehnel                          Richard F. Hans
   Christopher Huck                          Kerry F. Cunningham
8  Bradley T. Meissner                       Corey Elanor Delaney
   DLA Piper LLP (US)                        DLA Piper LLP (US)
9  701 Fifth Avenue, Suite 7000              1251 Avenue of the Americas, 27th Floor
   Seattle, WA 98104-7044                    New York, NY 10020-1104
10 E-mail: stellman.keehnel@dlapiper.com     E-mail: richard.hans@dlapiper.com
11 E-mail: christopher.huck@dlapiper.com     E-mail: kerry.cunningham@dlapiper.com
   E-mail: bradley.meissner@dlapiper.com     E-mail: corey.delaney@dlapiper.com

12                          ***Counsel for Defendants***

13

14

15  *[signature]*
    Carol A. Cannon, Legal Assistant

16

17

18

19

20

21

22

23

24

25

26

27

MOTION FOR LIMITED ADMISSION OF SERENA
RICHARDSON PURSUANT TO APR 8(B) (PRO HAC
VICE) AND ORDER - 5
(08-2-43598-9 SEA)

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

Case Number:       08-2-43598-9
Case Title:        NEW ORLEANS EMPLOYEES RETIREMENT ET ANO VS FIRST AMERICAN CORP
ET ANO
Document Title:    MOTION OF PLAINTIFFS RE MOTION FOR LIMITED ADMISSION OF SERENA
RICHARDSON
User's Name:       Timothy Moran
Filed Date:        1/21/2009 3:25:14 PM

User Signed

Signed By:     Timothy Moran
WSBA #:        24925
Date:          1/21/2009 3:21:33 PM

**FILED**

09 JAN 21 PM 3:25

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 08-2-43598-9 SEA

HONORABLE CHRIS WASHINGTON
*Hearing Date: Friday, January 30, 2009*
*Without Oral Argument*

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| NEW ORLEANS EMPLOYEES' RETIREMENT SYSTEM and MARTA/ATU LOCAL 732 EMPLOYEES RETIREMENT PLAN, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>THE FIRST AMERICAN CORPORATION and FIRST AMERICAN eAPPRAISEIT, LLC,<br><br>        Defendants. | **CLASS ACTION**<br><br>Case No. 08-2-43598-9 SEA<br><br>MOTION FOR LIMITED ADMISSION OF PAUL SCARLATO PURSUANT TO APR 8(b) (PRO HAC VICE) AND [PROPOSED] ORDER |

### I.  RELIEF REQUESTED

The Moving Party named below moves the court for the limited admission of the

Applicant for Limited Admission named below for the purpose of appearing as a lawyer in this

proceeding.

**Identity of Moving Party** (Washington State Bar Association Member):

Name:     Timothy M. Moran          WSBA No.  24925

Address:    Kipling Law Group PLLC

             3601 Fremont Ave. N., Suite 414, Seattle, WA 98103

Telephone No.  206-545-0345    Email:    moran@kiplinglawgroup.com

MOTION FOR LIMITED ADMISSION OF PAUL
SCARLATO PURSUANT TO APR 8(B) (PRO HAC VICE)
AND ORDER - 1]
(08-2-43598-9 SEA)

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1  **Identity of Applicant for Limited Admission:**

2  Name: ___Paul Scarlato_____ Bar No.__PA 47155___

3  Jurisdiction of Primary Practice: ___Pennsylvania_____

4  Address: ___Labaton Sucharow LLP_____

5
6  ___140 Broadway, Floor 34, New York, NY 10005___

7  Telephone No. _212-907-0700___ Email: _____pscarlato@labaton.com___

8  Washington Address (if applicable): _____

9  _____

10  Telephone No. _____ Email: _____

11  ### II.    STATEMENT OF THE FACTS

12  Plaintiffs have filed this action in King County Superior Court against corporate

13  defendants that include several Washington corporations whose principal place of business is in

14  Seattle, and against individual defendants who are or were employed by or otherwise associated

15  with one or more of those defendants. The Applicant for Limited Admission meets the

16  qualifications for limited admission that are set forth in APR 8(b).

17  ### III.    STATEMENT OF THE ISSUE

18  The following issue is presented for resolution by the court:

19  Should the Applicant for Limited Admission named above be granted limited admission

20  to the practice of law pursuant to APR 8(b) for the purpose of appearing as a lawyer in this

21  proceeding?

22  ### IV.    EVIDENCE RELIED UPON

23  This motion is based on the accompanying certifications of the Moving Party and the

24  Applicant for Limited Admission.

25  ### V.    LEGAL AUTHORITY

26  This motion is made pursuant to Rule 8(b) of the Admission to Practice Rules (APR).

27

MOTION FOR LIMITED ADMISSION OF PAUL
SCARLATO PURSUANT TO APR 8(B) (PRO HAC VICE)
AND ORDER - 2
(08-2-43598-9 SEA)

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1          **VI.    PROPOSED ORDER**

2       A proposed order granting the relief requested accompanies this motion.

3       RESPECTFULLY SUBMITTED this 21ˢᵗ day of _January_, 2009.

5

6                  Timothy M. Moran, WSBA No. 24925

                 Moving Party

7

8      **CERTIFICATION OF APPLICANT FOR LIMITED ADMISSION**

9 I hereby certify under penalty of perjury under the laws of the State of Washington that:

10     1.   I am a member in good standing of the bar of the state or territory of the United States

11 or of the District of Columbia listed above as my jurisdiction of primary practice.

12

13     2.   I am a resident of and maintain a law practice in that jurisdiction of primary practice.

14     3.   I have read the Rules of Professional Conduct adopted by the Supreme Court of the

15 State of Washington and agree to abide by them.

16     4.   I have complied with all of the requirements of APR 8(b).

17     5.   I have read the foregoing motion and certification and the statements contained in it

18 are full, true and correct.

19     Signed on _January 9, 2009_ at _New York, New York_.

20

21

22            Paul Scarlato, Applicant for Limited Admission

23     **CERTIFICATION OF MOVING PARTY/WSBA MEMBER**

24 I hereby certify under penalty of perjury under the laws of the State of Washington that:

25     1.   I am an active member in good standing of the Washington State Bar Association.

26     2.   I will be the lawyer of record in this proceeding, responsible for the conduct of the

27

MOTION FOR LIMITED ADMISSION OF PAUL
SCARLATO PURSUANT TO APR 8(B) (PRO HAC VICE)
AND ORDER - 3
(08-2-43598-9 SEA)

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1  applicant, and present at proceedings in this matter unless excused by the court.

2      3.  I have submitted a copy of this motion together with the required fee of $250 to the

3  Washington State Bar Association, 1325 4th Ave., Ste. 600, Seattle, WA 98101-2539.

4      4.  I have complied with all of the requirements of APR 8(b).

5      5.  I have read the foregoing motion and certification and the statements contained in it

6  are full, true and correct.

7

8      Signed on _____ Jan. 21, 2009 _____ at Seattle, Washington.

9

10     _____
       Timothy M. Moran, Moving Party

11

12              **ORDER**

13     It is hereby ORDERED that the Applicant for Limited Admission pursuant to APR 8(b)

14

15  listed above is admitted to practice as a lawyer in this proceeding.  The Moving Party shall be the

16  lawyer of record herein, is responsible for the conduct hereof, and shall be present at all

17  proceedings unless excused by this court.

18     Dated _____.

19

20                          _____

21                          JUDGE CHRIS WASHINGTON

22

23

24

25

26

27

MOTION FOR LIMITED ADMISSION OF PAUL              KIPLING LAW GROUP PLLC
SCARLATO PURSUANT TO APR 8(B) (PRO HAC VICE)      3601 FREMONT AVE N, SUITE 414
AND ORDER - 4                                     SEATTLE, WASHINGTON 98103
(08-2-43598-9 SEA)                                telephone (206) 545-0345
                                                  fax (206) 545-0350

1

**CERTIFICATE OF SERVICE**

2      I do hereby certify that on this 21ˢᵗ day of January, 2009, I caused to be served a true

3  and correct copy of the foregoing *Motion for Limited Admission of Paul Scarlato Pursuant to*

4  *APR 8(b) (Pro Hac Vice) and Order* by method indicated below and addressed to the following:

5  By: [☐] U.S. Mail [☐] Overnight Mail [☐] Facsimile [☐] Hand Delivered [X] E-Mail

6  Stellman Keehnel                    Richard F. Hans
   Christopher Huck                    Kerry F. Cunningham

7  Bradley T. Meissner                 Corey Elanor Delaney
   DLA Piper LLP (US)               DLA Piper LLP (US)

8  701 Fifth Avenue, Suite 7000       1251 Avenue of the Americas, 27th Floor
   Seattle, WA 98104-7044         New York, NY 10020-1104

9  E-mail: stellman.keehnel@dlapiper.com  E-mail: richard.hans@dlapiper.com

10  E-mail: christopher.huck@dlapiper.com  E-mail: kerry.cunningham@dlapiper.com
   E-mail: bradley.meissner@dlapiper.com  E-mail: corey.delaney@dlapiper.com

11

*Counsel for Defendants*

12

13

14                         Carol A. Cannon
                           Carol A. Cannon, Legal Assistant

15

16

17

18

19

20

21

22

23

24

25

26

27

MOTION FOR LIMITED ADMISSION OF PAUL
SCARLATO PURSUANT TO APR 8(B) (PRO HAC VICE)
AND ORDER - 5
(08-2-43598-9 SEA)

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

Case Number:        08-2-43598-9
Case Title:         NEW ORLEANS EMPLOYEES RETIREMENT ET ANO VS FIRST AMERICAN CORP
ET ANO
Document Title:     MOTION OF PLAINTIFFS RE MOTION FOR LIMITED ADMISSION OF PAUL
SCARLATO
User's Name:        Timothy Moran
Filed Date:         1/21/2009 3:25:14 PM

User Signed

Signed By:    Timothy Moran
WSBA #:       24925
Date:         1/21/2009 3:21:33 PM

FILED

2009 JAN 21 PM 12: 12

SUPERIOR COURT CLERK
SEATTLE, WA

IN THE SUPERIOR COURT OF WASHINGTON
FOR KING COUNTY

NEW ORLEANS EMPLOYEES'
RETIREMENT SYSTEM and MARTA/ATU
LOCAL 732 EMPLOYEES RETIREMENT
PLAN, individually and on behalf of all others
similarly situated,

Plaintiffs,

v.

THE FIRST AMERICAN CORPORATION and
FIRST AMERICAN eAPPRAISEIT, LLC,

Defendants.

Case No. 08-2-43598-9 SEA

NOTICE OF APPEARANCE

TO:     THE CLERK OF THE COURT, and

TO:     ALL COUNSEL OF RECORD

We hereby enter our appearance as attorneys for Defendants The First American Corporation and eAppraiseIT, LLC. We request that all papers and pleadings, except for original process, in this proceeding be served upon us at our address stated below.

This Notice does not constitute a waiver of service or any other claim or defense, and all such claims and defenses are expressly reserved.

NOTICE OF APPEARANCE - 1
CASE NO. 08-2-43598-9 SEA

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 · Tel: 206.839.4800

1   Dated this 21st day of January, 2009.

2                                 DLA PIPER LLP (US)

3

4

5                                 Stellman Keehnel, WSBA No. 9309
                                  Christopher Huck, WSBA No. 34104
6                                 Bradley T. Meissner, WSBA No. 39592
                                  701 Fifth Avenue, Suite 7000
7                                 Seattle, WA  98104-7044
                                  Tel:     206.839.4800
8                                 Fax:    206.839.4801
                                  E-mail:  stellman.keehnel@dlapiper.com
9                                 E-mail:  christopher.huck@dlapiper.com
                                  E-mail:  bradley.meissner@dlapiper.com

10

11                                Richard F. Hans
                                  Kerry F. Cunningham
12                                Corey Elanor Delaney
                                  DLA PIPER LLP (US)
13                                1251 Avenue of the Americas
                                  27th Floor
14                                New York, New York  10020-1104
                                  Tel:     212.335.4500
15                                Fax:    212.335.4501

16                                Attorneys for Defendants
                                  The First American Corporation and eAppraiseIT, LLC

17

18

19

20

21

22

23

24

25

26

**CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of January, 2009, I caused to be served a true and complete copy of the foregoing **NOTICE OF APPEARANCE** on counsel of record at the address listed below by the method shown:

| **Attorneys for Plaintiffs** | |
|---|---|
| Robert D. Stewart<br>Timothy M. Moran<br>KIPLING LAW GROUP PLLC<br>3601 Fremont Avenue North<br>Suite 414<br>Seattle, Washington  98103<br><br>stewart@kiplinglawgroup.com<br>moran@kiplinglawgroup.com | [ X ] Via Hand Delivery<br>[    ] Via U.S. Mail<br>[    ] Via Facsimile<br>[    ] Via Email |
| Joseph A. Fonti<br>Jonathan Gardner<br>LABATON SUCHAROW LLP<br>140 Broadway<br>New York, New York  10005<br><br>jfonti@labaton.com<br>jgardner@labaton.com | [    ] Via Hand Delivery<br>[ X ] Via U.S. Mail<br>[    ] Via Facsimile<br>[    ] Via Email |
| John A. Kehoe<br>Sharan Nirmul<br>Bharati O. Sharma<br>BARROWAY TOPAZ KESSLER MELTZER &<br>CHECK, LLP<br>280 King of Prussia Road<br>Radnor, Pennsylvania  19087<br><br>jkehoe@btkmc.com<br>snirmul@btkmc.com<br>bsharma@btkmc.com | [    ] Via Hand Delivery<br>[ X ] Via U.S. Mail<br>[    ] Via Facsimile<br>[    ] Via Email |

Signed at Seattle, Washington, this 21st day of January, 2009.

_____
Christopher M. Huck

WEST\21645651.1

CERTIFICATE OF SERVICE - 1
CASE NO. 08-2-43598-9 SEA

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 · Tel: 206.839.4800

105